[No. S052972. May 5, 1997.]

ALENE M. SULLIVAN, as Special Administrator, etc., Plaintiff and Respondent, v.
DELTA AIR LINES, INC., Defendant and Appellant.

COUNSEL

J. Michael Garner, Bronson, Bronson & McKinnon, Gilmore F. Diekmann, Jr., and Patricia H. Cullison for Defendant and Appellant.

Haight, Brown & Bonesteel, Roy G. Weatherup, William J. Sayers and Caroline E. Chan as Amici Curiae on behalf of Defendant and Appellant.

Ralph C. Petersen, Kazan, McClain, Edises, Simon & Abrams and Dianna Lyons for Plaintiff and Respondent.

Ian Herzog, Douglas Devries, Leonard Sacks, Bruce Broillet, Thomas Stolpman, Robert B. Steinberg, Roland Wrinkle, Gary Paul, Steven Kleifield, Harvey Levine, Mary E. Alexander, Wayne McClean, William Turley, David Casey, Tony Tanke, Rose, Klein & Marias, David A. Rosen, Wartnick, Chaber, Harowitz, Smith & Tigerman, Harry F. Wartnick and Daniel U. Smith as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**MOSK, J.**—Code of Civil Procedure section 377.34 prohibits recovery of damages for pain and suffering in an action brought or maintained on

behalf of a deceased plaintiff. ██ We address here the narrow question whether this statute applies when a judgment for such damages is rendered while the decedent is alive but the decedent dies during the pendency of an appeal from that judgment. The Court of Appeal held that the statute does apply in that situation, and reversed a judgment for the decedent with directions to dismiss the action. As will appear, we conclude that the statute does not apply in the stated circumstances, and therefore reverse the judgment of the Court of Appeal with directions to address the merits of the appeal.

Most of the facts brought out at trial are irrelevant to the limited procedural question we address here. For present purposes it is enough to note the following: The decedent, Joseph A. Sullivan (Sullivan), was employed by defendant until his discharge in 1991. Sullivan filed an action against defendant on multiple legal theories arising from his termination, alleging 14 causes of action in his amended complaint. The trial court granted defense motions for summary judgment on seven of the causes of action (counts 1, 3, 10-14). The jury returned special verdicts for defendant on three causes of action (counts 7, 8, 9). The jury also returned special verdicts for Sullivan on three causes of action (counts 2, 4, 5); on those causes of action the jury awarded Sullivan damages for emotional distress totaling $275,000. The jury deadlocked on the remaining cause of action (count 6), and the court declared a mistrial on that cause of action.

On May 10, 1994, the court rendered a purported judgment on the three verdicts in Sullivan's favor. The court did not render judgment on either the three defense verdicts or on its orders granting the defense motions for summary judgment on seven causes of action. Sullivan moved for a "new trial" on the cause of action on which the jury deadlocked, and the court granted the motion. Defendant filed an appeal from the purported judgment, from the purported new trial order, and from the denial of its motion for judgment notwithstanding the verdict.

Sullivan died on February 19, 1995, while the appeal was being briefed. His will named his mother, Alene M. Sullivan, as his sole beneficiary, and in due course she was appointed his special administrator and substituted as plaintiff. On its own motion the Court of Appeal requested supplemental briefing on the question whether the judgment should be reversed on the ground that damages for pain and suffering are no longer recoverable because of Sullivan's death. The court thereafter limited oral argument to that question.

In its decision the Court of Appeal construed Code of Civil Procedure section 377.34 to bar recovery of damages for pain and suffering awarded in

a judgment if the plaintiff dies while an appeal is pending; the court stressed that the statute applies generally to "an action," and construed that word to include an appeal. Accordingly, the court concluded that no damages were recoverable on the three causes of action on which the jury found defendant liable. Turning to the cause of action on which a new trial had purportedly been granted, the Court of Appeal noted that the trial court had struck all claims for economic damages on that count; it then reasoned that because pain and suffering damages would not be recoverable under its general holding and hence punitive damages would not be recoverable for want of compensatory damages, no damages at all would be recoverable in such a trial. The Court of Appeal therefore reversed both the purported judgment and the purported new trial order and directed the trial court to dismiss the action; the court did not reach the merits of the appeal. We granted review to determine the correct construction of Code of Civil Procedure section 377.34.

I

Code of Civil Procedure section 377.34 (hereafter sometimes section 377.34) provides in full that "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, *the damages recoverable* are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and *do not include damages for pain, suffering, or disfigurement.*" (Italics added.) The statute was enacted in 1992 on recommendation of the California Law Revision Commission; its history may be easily traced, and will prove to be instructive. We begin with two distinct common law rules.

A. *Effect of death before judgment*

At common law, all causes of action for personal torts abated on the death of either the injured party or the tortfeasor, and the cause of action for wrongful death abated on the death of the tortfeasor. The rule was expressed in the maxim, *actio personalis moritur cum persona,* i.e., a personal action dies with the person. Other causes of action, principally property and contract claims, did not abate with the death of a party. (See, e.g., *Hambly* v. *Trott* (1776) 98 Eng.Rep. 1136, 1138 [distinguishing between contract actions and tort actions], 1139 [distinguishing between torts by which property was acquired and those by which it was not]; 3 Blackstone, Commentaries 302 [distinguishing between tort actions and contract actions]; Winfield, *Death as Affecting Liability in Tort* (1929) 29 Colum. L.Rev. 239, 244-248 [history of maxim].)

California followed the common law rule. (See, e.g., *Munchiando* v. *Bach* (1928) 203 Cal. 457, 458 [264 P. 762] [action for personal injuries, death of plaintiff]; *Harker* v. *Clark* (1881) 57 Cal. 245, 246 [action for false imprisonment, death of defendant]; *Clark* v. *Goodwin* (1915) 170 Cal. 527, 529 [150 P. 357] [action for wrongful death, death of defendant].) As this court stated in the latter case (170 Cal. at p. 529), "Nothing was more firmly settled at common law than the rule that such a cause of action . . . does not survive the death of either the person to or by whom the wrong was done. This rule exists here except in so far as it has been modified or abolished by statute."

### B. *Effect of death after judgment*

The foregoing common law rule of abatement of causes of action for personal torts applied when the plaintiff died *before* judgment; as we shall see, the statutes abolishing that rule in California so specified. A different rule applied at common law, however, when the plaintiff died *after* judgment: "As a general rule, an action is not abated by the death of a party after the cause of action has been merged in a final judgment and while the judgment stands, even though the judgment is based on a cause of action which would not survive the death of a party before judgment. In such case, the doctrine of abatement does not apply." (1 C.J.S., Abatement and Revival, § 127, p. 172, fns. omitted.) For the purposes of that rule a judgment was "final" even though it was on appeal when the plaintiff died: "As a general rule, the death of a party pending an appeal or writ of error is not a ground for abatement of the suit . . . ." (*Id.* at § 128, p. 173, fn. omitted.)[1]

Again California followed the common law rule. The leading case in this court is *Fowden* v. *Pacific Coast Steamship Co.* (1906) 149 Cal. 151 [86 P. 178] (hereafter *Fowden*). There a passenger on a steamer was injured when a hawser broke while the vessel was docking. He sued the steamship company for damages; the jury returned a verdict for the plaintiff, and the court entered judgment on the verdict. The court thereafter denied the defendant's motion for a new trial, and the defendant appealed from that order. While the appeal was pending, the injured plaintiff died and his special administrator was substituted as plaintiff.

In this court the defendant contended that the injured plaintiff's death abated the action, relying on the rule *actio personalis moritur cum persona*. This court acknowledged the rule, but held it inapplicable when the plaintiff

---

[1]The plaintiff's death during an appeal nevertheless abated a cause of action for personal tort (1) if the judgment was for the defendant, or (2) if for the plaintiff, it was reversed on the appeal. (1 C.J.S., Abatement and Revival, § 127, p. 173.)

is awarded a judgment but dies during an appeal; in that event the case is governed by the rule that the cause of action is merged into the judgment, and the judgment is merely suspended until the appeal is resolved. We said: "it may be conceded that the rule [*actio personalis moritur cum persona*] applies to such a cause of action as is stated in the complaint herein, and that no change in the common-law rule material to such a cause of action has been made by statute in this state. (See *Harker* v. *Clark*, [*supra*,] 57 Cal. 245.) It must, however, be held that the rule has no application under the circumstances of this case. Here, judgment upon the cause of action alleged was given and entered in favor of the plaintiff prior to his death, and this judgment has not been vacated." (*Fowden, supra,* 149 Cal. at pp. 153-154.)

We reasoned that a motion for new trial, like an appeal, does not vacate the judgment but simply suspends its operation until the challenge is resolved. (*Fowden, supra,* 149 Cal. at p. 154.) We then observed that in California—contrary to some jurisdictions—an appeal does not annul the judgment and result in a new trial in the reviewing court; rather, the appeal is "in the nature of a writ of error," i.e., it asks the appellate court to review the record of the trial for errors and to affirm, reverse, or modify the judgment accordingly. (*Ibid.*) We therefore applied the rule governing cases of death after judgment: "The authorities are practically unanimous upon the proposition that although the cause of action is such that it would abate by the death of the plaintiff *before* judgment, the death of the plaintiff *after* judgment, and pending disposition of a writ of error or appeal in the nature of a writ of error, will not affect the judgment. As some of the cases say, the original wrong or claim is merged in the judgment, which has all the attributes of a judgment in actions *ex contractu*. After the giving of the judgment, the controversy is over the judgment, and not over the original wrong. The judgment is not annulled during the pendency of such controversy, but simply suspended. [Citations.]" (*Ibid.*, first and second italics added.)[2]

Earlier decisions of this court had pointed to the same rule (see *In re Lux* (1896) 114 Cal. 73, 81 [45 P. 1023]), and later decisions treated it as settled. Thus in *Andrews* v. *Valley Ice Co.* (1914) 167 Cal. 11, 12-13 [138 P. 699], a wrongful death plaintiff died during an appeal from a judgment in her favor and the Court of Appeal rejected a defense contention that the action therefore abated; on review in this court, we found it necessary only to observe that "This latter contention was correctly held of no avail upon the

---

[2]We went on to distinguish the cases in which the judgment was for the defendant or a judgment for the plaintiff (or an order denying the defendant's motion for new trial) was reversed. (*Fowden, supra,* 149 Cal. at p. 155.) As noted above, the common law rule also distinguished those cases. (Fn. 1, *ante.*)

authority of *Fowden* v. *Pacific Steamship Co.*, 149 Cal. [at] 153 [86 Pac. 178]." In *Bock* v. *Hamilton Square Baptist Church* (1933) 219 Cal. 284, 289 [26 P.2d 7], a defendant appealing from a judgment awarding damages jointly to an injured wife and her husband demanded segregation of the wife's share of the award because her right of action would assertedly abate if she were to die during the appeal; again we found it necessary only to observe that "This alleged reason is based upon an erroneous conception of the law. (*Fowden* v. *Pacific Coast Steamship Co.*, 149 Cal. 151 [86 Pac. 178]; . . .)"

As noted, the plaintiff in *Fowden, supra*, 149 Cal. 151, died during the defendant's appeal from an order *denying* a new trial. The opposite situation arose in *Sherwin* v. *Southern Pacific Co.* (1914) 168 Cal. 722 [145 P. 92] (*Sherwin*), but this court nevertheless followed *Fowden*. In *Sherwin* the injured plaintiff received a verdict and judgment in his favor, but died while the defendant's motion for a new trial was pending. His was executrix substituted as plaintiff. The court then *granted* the defendant's motion for a new trial, and the executrix appealed.

The defendant contended that the death of the injured plaintiff abated the action because the order granting the new trial assertedly vacated the judgment and set the case at large as a general reversal on appeal would have done. We rejected the contention. We began (*Sherwin, supra*, 168 Cal. at p. 724) by reaffirming the *Fowden* rule: "It is well settled that the death of the plaintiff in such an action, after a judgment in his favor, and while the judgment stands, does not abate the action or affect the validity of the judgment. Such judgment becomes a part of his estate and may be enforced by his representatives. Accordingly, it has been held that the death of the plaintiff after such judgment and while a motion for a new trial is pending, or during the pendency of an appeal by the defendant from an order denying a new trial, does not abate the action, and that in such a case the judgment stands until it is vacated on the appeal, and that if the order is affirmed, the original judgment is good. (*Fowden* v. *Pacific C. S. Co.*, 149 Cal. [at] 154, [86 Pac. 178].)"

We then held that the same rule applied even though the trial court had granted the defendant's motion for new trial. We reasoned that the executrix had the right to appeal from that order, and that appeal suspended the operation of the order until it was resolved: "while the appeal therefrom, if taken, is pending, the order is subject to the condition that if it is reversed its effect to vacate the judgment will be annulled, and the judgment will then stand as if no order granting a new trial had been made, or as if the motion had been denied and such denial had become final or had been affirmed on

appeal. The appellant is therefore entitled to prosecute this appeal, in order to produce this result and restore the judgment to its original vigor if the appeal is successful." (*Sherwin, supra,* 168 Cal. at p. 725.) Again, therefore, the death of the injured plaintiff after entry of judgment did not abate the action.

Although this court has not since had occasion to revisit the common law rule governing cases of death after judgment, the Courts of Appeal have continued to apply the rule on the authority of *Fowden* and its progeny. (E.g., *Blackwell* v. *American Film Co.* (1920) 48 Cal.App. 681, 683 [192 P. 189]; *Widener* v. *Hartnett* (1938) 30 Cal.App.2d 165, 167-168 [85 P.2d 925]; *Gutierrez* v. *Alvarado* (1972) 24 Cal.App.3d 327, 329, fn. 1 [101 Cal.Rptr. 1] (per Kaus, P. J.).) Unless it has been modified or abolished by statute, the *Fowden* rule remains the law of this state.

## II

We turn to the statutory law of California on the subject of survival of causes of action for personal torts. Although the Legislature has codified that law successively in three different codes, the provision that concerns us here has remained substantively unchanged throughout.

## A

After at least a half century of debate and many unsuccessful legislative initiatives, California's first statute providing for the survival of personal tort actions was enacted in 1949. (Stats. 1949, ch. 1380, § 2, p. 2400.) The statute was codified as section 956 of the Civil Code (hereafter sometimes former section 956).

The first sentence of former section 956 declared a general, although limited, rule of survivability: It provided that a cause of action for physical injuries to the person is not abated by the death of either the person injured or the tortfeasor.[3] The second sentence of the statute specified (1) that by the words, "the death of the person injured," in the first sentence, it meant that person's death "before judgment," and (2) that even when such a cause of action survived, damages for the deceased's pain and suffering, inter alia, were not recoverable. Thus the second sentence of former section 956 provided: *"When the person entitled to maintain such an action dies before*

---

[3]Thus the first sentence of former section 956 provided: "A thing in action arising out of a wrong which results in physical injury to the person or out of a statute imposing liability for such injury shall not abate by reason of the death of the wrongdoer or any other person liable for damages for such injury, nor by reason of the death of the person injured or of any other person who owns any such thing in action." (Stats. 1949, ch. 1380, § 2, p. 2400.)

*judgment,* the damages recoverable for such injury shall be limited to loss of earnings and expenses sustained or incurred as a result of the injury by the deceased prior to his death, and *shall not include damages for pain, suffering or disfigurement,* nor punitive or exemplary damages, nor prospective profits or earnings after the date of death." (Stats. 1949, ch. 1380, § 2, p. 2400, italics added.)

■ It is apparent that former section 956 abolished in this state the common law rule that death *before* judgment abates personal tort actions (pt. IA, *ante*), at least with regard to actions for physical injuries and certain types of damages. It is equally apparent, however, that former section 956 did not abolish or in any way modify the common law rule that death *after* judgment does not abate personal tort actions (pt. I.B., *ante*). This conclusion is compelled by the plain language of the statute itself, which expressly limited its application to instances "When the person entitled to maintain such an action dies before judgment . . . ."[4]

B

In 1961 the Legislature revisited the entire subject of survival of actions. (Stats. 1961, ch. 657, p. 1867 et seq.) As part of that process the Legislature repealed former Civil Code section 956 and moved its provisions, with certain amendments, into section 573 of a different code, the Probate Code (hereafter sometimes former section 573). The 1961 legislation was drafted by the California Law Revision Commission, and its report explains the reasons for the amendments it proposed to the Legislature. (Recommendation and Study Relating to Survival of Actions (Oct. 1960) 3 Cal. Law Revision Com. Rep. (1961) p. F-5 (hereafter 1961 Law Revision Commission Report).) We may refer to that report as evidence of the Legislature's intent in adopting the provisions thus proposed. (E.g., *Estate of Propst* (1990) 50 Cal.3d 448, 460 [268 Cal.Rptr. 114, 788 P.2d 628].)

First, the commission recommended that the survival statute be expanded to include actions for personal torts that do not result in physical injury (e.g.,

---

[4]If confirmation of this conclusion is needed, it is readily available. First, we presume that in specifying that former section 956 applied to cases of death *before* judgment, the Legislature acted with knowledge of the *different but equally settled rule governing cases of death after* judgment. (E.g., *Williams* v. *Garcetti* (1993) 5 Cal.4th 561, 572 [20 Cal.Rptr.2d 341, 853 P.2d 507].) Second, the publication that proposed the precise wording of former section 956 and expressed the intent of its drafters neither stated nor implied that the statute would also apply to cases of death after judgment, but was wholly silent as to such cases. (Livingston, *Survival of Tort Actions: A Proposal for California Legislation* (1949) 37 Cal.L.Rev. 63.) Third, the controversial decision of this court that apparently served as the immediate impetus for the enactment of former section 956 (*Hunt* v. *Authier* (1946) 28 Cal.2d 288 [169 P.2d 913, 171 A.L.R. 1379]) was itself a case of death before, not after, judgment.

zmalicious prosecution, false imprisonment, invasion of privacy, defamation), reasoning that "The failure of these actions to survive at common law appears to rest in large part on nothing more than the continued application of the ancient maxim that 'personal actions die with the person.' This maxim merely states a largely meaningless conclusion, has no compelling wisdom on its face, is of obscure origin, and appears to be of questionable application to modern conditions." (1961 Law Revision Com. Rep., *supra*, at p. F-6, fn. omitted.) The Legislature adopted this recommendation, providing in the first paragraph of former section 573 that "*no cause of action shall be lost by reason of the death of any person*" (italics added).

Second, the commission recommended that the survival statute be expanded to allow recovery of punitive damages that the deceased plaintiff would have been entitled to recover if he or she had lived, reasoning in part that "The object of awarding such damages being to punish the wrongdoer, it would be particularly inappropriate to permit him to escape such punishment in a case in which he killed rather than only injured his victim." (1961 Law Revision Com. Rep., *supra*, at p. F-7.) The Legislature adopted this recommendation in the third paragraph of former section 573.

Third—and most important for our inquiry—in its proposed new statute the commission reiterated the 1949 definition of the death of the injured person as that person's death "before judgment." The Legislature adopted this proposal, providing in the third paragraph of former section 573 that: "*When a person having a cause of action dies before judgment,* the damages recoverable by his executor or administrator are limited to such loss or damage as the decedent sustained or incurred prior to his death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had he lived, and shall not include damages for pain, suffering or disfigurement." (Stats. 1961, ch. 657, § 2, p. 1868, italics added.)[5]

It is apparent from the emphasized language that former Probate Code section 573, like its predecessor former Civil Code section 956, did not abolish the common law rule that death *after* judgment does not abate any aspect of personal tort actions. Indeed, one of the reasons given by the commission for recommending the adoption of former section 573 was that it would make "no substantive change" in existing law on the topic of survival of non-tort actions, noting specifically that "Causes of action based on . . . judgments have long survived at common law. . . . Fowden v.

---

[5]In 1987 the Legislature numbered the third paragraph of former section 573 as subdivision (c) of that section, and made minor changes in its wording. (Stats. 1987, ch. 923, § 35.5, p. 2982, eff. July 1, 1988.)

Pacific Coast Steamship Co., 149 Cal. 151, 86 Pac. 178 (1906) (judgment);
. . ." (1961 Law Revision Com. Rep., *supra*, at pp. F-8 & F-9, fn. 4.)

A recent opinion of the Court of Appeal made the point in a well-considered dictum. In *Williamson* v. *Plant Insulation Co.* (1994) 23 Cal.App.4th 1406 [28 Cal.Rptr.2d 751], a trial for asbestos injuries was ordered bifurcated, with damages to be determined in the first phase and liability and comparative fault in the second. The jury returned a first-phase verdict fixing the amounts of both economic and noneconomic damages. The injured plaintiff died after the witnesses had testified at the second phase but before the court's rulings on the admission of exhibits, the arguments and instructions to the jury on the second phase, and the jury's deliberations and verdict on that phase. The defendant moved to strike the noneconomic damages from the first-phase verdict because of the plaintiff's death; instead, the court completed the trial proceedings and allowed the jury to return a second-phase verdict finding the defendant liable and assigning comparative fault. The court entered judgment on that verdict nunc pro tunc as of the day before the plaintiff died. The Court of Appeal reversed the judgment insofar as it included noneconomic damages.

In an opinion authored by Justice Werdegar, the Court of Appeal held that the plaintiff died "before judgment" within the meaning of former section 573. The court recognized that the rule of former section 573 barring recovery of noneconomic damages awarded by a jury merely "because the plaintiff died a few days before his trial could be completed may appear somewhat arbitrary." (*Williamson* v. *Plant Insulation Co.*, *supra*, 23 Cal.App.4th at p. 1417.) But the court reasoned that "Nonetheless, a line must be drawn if section 573(c) is to have any effect at all, and in that section, the Legislature drew a clear line: noneconomic damages do not survive if the plaintiff dies before judgment." (*Ibid.*, fn. omitted.) The court then contrasted that circumstance with the circumstance now before us, i.e., when the plaintiff dies *after* judgment: "Of course, the arbitrariness of the bright line can also work to the plaintiff's advantage. The plaintiff who receives a large award for pain and suffering and dies the day after judgment is entered passes that award on to his or her estate" (*ibid.*, fn. 3).

## C

The third major revision of the law governing survival of actions took place in 1992. (Stats. 1992, ch. 178, § 20.) The Legislature repealed former section 573 and moved its provisions, with certain amendments, into a new chapter of yet a different code, the Code of Civil Procedure. (Code Civ. Proc., pt. 2, tit. 3, ch. 4, beginning with § 377.10.) Again the new legislation

was drafted by the California Law Revision Commission, and again we may refer to its report as evidence of legislative intent. (Litigation Involving Decedents (Apr. 1992) 22 Cal. Law Revision Com. Rep. (1992) p. 895 (hereafter 1992 Law Revision Commission Report).)

The general rule of survival of actions declared by former Probate Code section 573 was reenacted essentially verbatim in Code of Civil Procedure section 377.20, subdivision (a) ("Except as otherwise provided by statute, a cause of action for or against a person is not lost by reason of the person's death . . . .").

 The provision of interest here—subdivision (c) of former section 573—became Code of Civil Procedure section 377.34. We show the changes made at that time by printing the additions in italics and the deletions in strikeout type: "~~Where a person having a cause of action dies before judgment~~ *In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action,* the damages recoverable ~~by his or her personal representative~~ are limited to the loss or damage *that* the decedent sustained or incurred ~~prior to~~ *before* death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived ~~but~~, *and do* not ~~including any~~ *include* damages for pain, suffering, or disfigurement."

We need not speculate on the significance, if any, of these changes, because the commission appended an explanatory comment to each section of its proposed legislation. Its comment to section 377.34 provides in full: "Section 377.34 restates former Probate Code Section 573(c) *without substantive change*, and adds the reference to the successor in interest. See Section 377.11 ('decedent's successor in interest' defined); Prob. Code § 58 ('personal representative' defined). The limitations in this section apply to the decedent's cause of action and not to a cause of action that others may have for the wrongful death of the decedent. See Sections 377.60-377.62 (wrongful death)." (1992 Law Revision Com. Rep., *supra*, p. 934, italics added.)

It is noteworthy that in this comment the commission mentions only two of the several differences in wording between section 377.34 and its predecessor. First, the commission points out that the new section adds a reference to the decedent's successor in interest; indeed, in the introduction to its report the commission explains that the principal change made throughout the 1992 legislation was to authorize the decedent's successor in interest to bring or defend an action when there are no probate proceedings pending and hence no personal representative appointed. (1992 Law Revision Com.

Rep., *supra*, pp. 900-903.) Second, the commission notes that the new section specifies that it applies only to causes of action personal to the decedent and not to causes of action that others may have for the decedent's wrongful death.

By contrast, the commission is silent on the other differences in wording between section 377.34 and its predecessor; in particular, the commission makes no comment whatever on its substitution of the current phrase, "In an action or proceeding by the decedent's personal representative or successor in interest," for the former phrase, "Where a person having a cause of action dies before judgment." The Court of Appeal inferred that this change in wording was highly significant, justifying its reading of "action" to include "appeal." The inference cannot be maintained, however, in face of the fact that the commission itself characterizes the current wording of Code of Civil Procedure section 377.34 as simply restating former Probate Code section 573 "without substantive change": the commission evidently believes this substitution is no more significant, for example, than its substitution in the same statute of "before" for "prior to," and of "do not include" for "not including." If the commission had truly intended to abolish the longstanding common law rule that death after judgment does not abate personal tort actions—a rule that in this state dates back at least to our 1906 decision in *Fowden, supra,* 149 Cal. 151—we doubt that the commission would have abolished it merely by implication, and we are certain that the commission would not have characterized the abolishing statute as restating its predecessor "without substantive change."[6]

Moreover, in attributing a special significance to the word "action" in section 377.34 the Court of Appeal gave no weight to the fact that the word does not stand alone in that statute but appears as part of a stock phrase—"action or proceeding"—that the Legislature uses virtually as a term of art throughout our codes. The Legislature employs this phrase whenever it wishes to refer comprehensively to all the judicial remedies available under our law: such remedies "are divided into two classes," to wit, "actions" and "special proceedings." (Code Civ. Proc., §§ 21-23.) The phrase "action or proceeding" appears in this sense literally hundreds of times in the Code of Civil Procedure alone; indeed, in the six sections comprising the brief article that includes section 377.34 (Code Civ. Proc., §§ 377.30-377.35), the phrase appears no less than twelve times. The Court of Appeal does not explain

---

[6]Two recent opinions of the Court of Appeal likewise note that "The provisions of section 573(c) have been continued without relevant change in Code of Civil Procedure section 377.34, added in 1992." (*Kellogg* v. *Asbestos Corp. Ltd.* (1996) 41 Cal.App.4th 1397, 1404, fn. 6 [49 Cal.Rptr.2d 256]; *Williamson* v. *Plant Insulation Co., supra,* 23 Cal.App.4th 1406, 1413, fn. 2.)

why the word "action" should be given a different meaning only in section 377.34.

Defendant recognizes that the commission characterizes section 377.34 as a restatement of former Probate Code section 573 "without substantive change" and that the latter section applied only when the person entitled to maintain the action died "before judgment." Defendant's primary contention is that as used in former section 573 the phrase "before judgment" meant before resolution of the *appeal* from the judgment. Defendant reaches this conclusion by reading "before judgment" to mean "before *final* judgment," and by taking the position that a judgment is not "final" until it has been affirmed on appeal or the time for appeal has passed. For this purpose defendant relies on cases reasoning that a judgment is not "final" as long as the action in which it was rendered is "pending," and that an action is "deemed to be pending . . . until its final determination upon appeal, or until the time for appeal has passed . . . ." (Code Civ. Proc., § 1049; see, e.g., *Pacific Gas & Elec. Co.* v. *Nakano* (1939) 12 Cal.2d 711, 714 [87 P.2d 700, 121 A.L.R. 417]; *McKee* v. *National Union Fire Ins. Co.* (1993) 15 Cal.App.4th 282, 287-288 [19 Cal.Rptr.2d 286].)

█ That is certainly one of the meanings of the phrase "final judgment," i.e., a judgment is not "final" as long as it remains subject to direct attack by appeal, by motion for a new trial, or motion to vacate the judgment. (*Southern Public Utility Dist.* v. *Silva* (1956) 47 Cal.2d 163, 165 [301 P.2d 841].) The phrase has been given that meaning in a variety of appropriate contexts.[7]

But finality on appeal is not the only meaning of the phrase "final judgment." On the contrary, it has long been recognized that "No hard-and-fast definition of 'final' judgment applicable to all situations can be given,

[7]For example, in determining (1) when a defendant may object to a complaint by demurrer or answer on the ground that there is "another action pending" between the parties on the same cause of action (Code Civ. Proc., § 430.10, subd. (c)), i.e., the former "plea in abatement" (*Collins* v. *Ramish* (1920) 182 Cal. 360, 366 [188 P. 550]); (2) when the judgment is sufficiently final to support a plea of res judicata (*Pellissier* v. *Title Guarantee etc. Co.* (1929) 208 Cal. 172, 183-184 [280 P. 947]); (3) when a cause of action on the judgment accrues for purposes of the statute of limitations (*Feeney* v. *Hinckley* (1901) 134 Cal. 467, 468 [66 P. 580]); (4) when a court may grant leave to file a cross-complaint "during the course of the action" (Code Civ. Proc., § 428.50, subd. (c); *City of Hanford* v. *Superior Court* (1989) 208 Cal.App.3d 580, 587-588 [256 Cal.Rptr. 274]); (5) when the judgment may be assigned (*Pacific Gas & Elec. Co.* v. *Nakano, supra,* 12 Cal.2d 711, 713-714); (6) when an action is "pending against the decedent at the time of death" (Prob. Code, § 9370, subd. (a)) for purposes of continuing the action against his personal representative (*Agnew* v. *Parks* (1958) 164 Cal.App.2d 837, 839 [331 P.2d 184]); and (7) when a federal bankruptcy action is pending so as to bar state court jurisdiction over the claim (*Security-First Nat. Bk.* v. *Superior Ct.* (1936) 12 Cal.App.2d 140, 142 [55 P.2d 532]).

since its finality depends somewhat upon the purpose for which and the standpoint from which it is being considered, and *it may be final for one purpose and not for another*. (Freeman on Judgments, 5th ed., sec. 27.) This is so manifest that it would be idle to attempt any exhaustive examination into the different cases in which the word 'final' is employed." (*Howard* v. *Howard* (1927) 87 Cal.App. 20, 25 [261 P. 714], italics added.) One of those other meanings, however, is relevant here.

In its most fundamental sense, "finality" is an attribute of every judgment at the moment it is rendered; indeed, if a judicial determination is not immediately "final" in this sense it is not a judgment, no matter what it is denominated. The Legislature has incorporated this meaning of finality into the very definition of a judgment: "A judgment is the *final* determination of the rights of the parties in an action or proceeding." (Code Civ. Proc., § 577, italics added.) And we have explained the meaning as follows: "A judgment is final 'when it terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined.' " (*Doudell* v. *Shoo* (1911) 159 Cal. 448, 453 [114 P. 579]; accord, *Lyon* v. *Goss* (1942) 19 Cal.2d 659, 670 [123 P.2d 11]; *Olson* v. *Cory* (1983) 35 Cal.3d 390, 399 [197 Cal.Rptr. 843, 673 P.2d 720].)

Finality in this sense not only makes a judicial determination a judgment, it also makes that judgment appealable. As we recently observed, "A judgment that leaves no issue to be determined except the fact of compliance with its terms is appealable." (*California Assn. of Psychology Providers* v. *Rank* (1990) 51 Cal.3d 1, 9 [270 Cal.Rptr. 796, 793 P.2d 2].) Indeed, recognizing that this meaning of finality is so fundamental that it is essentially redundant to speak of a *"final* judgment" in this sense, the Legislature no longer provides in the basic statute authorizing appeals from the superior court that such an appeal may be taken "From a *final* judgment entered in an action, or special proceeding" (former Code Civ. Proc., § 963, subd. 1, italics added); the statute now provides simply that an appeal may be taken "From a judgment" (Code Civ. Proc. § 904.1, subd. (a)(1)). The meaning is the same.

It follows that while it is pending on appeal a judgment is both "final" in the sense that it is appealable and not "final" in the sense that the appeal remains unresolved. (See, e.g., *Pacific Gas & Elec. Co.* v. *Nakano, supra,* 12 Cal.2d 711, 714; *Gillmore* v. *American C.I. Co.* (1884) 65 Cal. 63, 66 [2 P. 882]; *Oak Grove School Dist.* v. *City Title Ins. Co.* (1963) 217 Cal.App.2d 678, 696 [32 Cal.Rptr. 288].) In reading the phrase "before judgment" in former Probate Code section 573 to mean "before final judgment," defendant gives the concept of "finality" the first of the meanings discussed above—

i.e., a judgment is not "final" until it has been affirmed on appeal—but fails to explain why that meaning is appropriate for present purposes. We believe instead that the phrase "before judgment" in former section 573 should be read to mean before rendition of a judgment that is final in the fundamental sense that it leaves no issue to be determined between the parties except the fact of compliance. This reading gives significance to the fact that the Legislature omitted the word "final" from the phrase "before judgment" in former section 573, because, as we have seen, that word is redundant if "judgment" is used in the sense of an appealable judicial determination. (See Code Civ. Proc., § 904.1, subd. (a)(1).) And it results in a reading of former section 573 consistent with the rule of *Fowden*, *supra*, 149 Cal. 151, that the death of a prevailing plaintiff after rendition of judgment does not abate the action.[8]

We conclude that Code of Civil Procedure section 377.34, like its predecessors former Civil Code section 956 and former Probate Code section 573, did not abolish the common law rule that death after judgment does not abate any aspect of personal tort actions, including the right to recover damages for pain and suffering. (See *Whelan* v. *Rallo* (1997) 52 Cal.App.4th 989 [60 Cal.Rptr.2d 876] [punitive damages, defendant dies on appeal].) The Court of Appeal therefore erred in holding that section 377.34 bars recovery of pain and suffering damages awarded in a judgment if the plaintiff dies after that judgment is rendered but while an appeal is pending.

III

Defendant raises a number of additional contentions, but none is persuasive.

Defendant first contends that the issue is not whether Sullivan's causes of action survived his death; they did, by virtue of the above quoted statute providing generally for the survival of actions. (Code Civ. Proc., § 377.20.) Rather, defendant urges, the issue is whether Sullivan's right to recover damages for pain and suffering in that action survived his death after judgment. But this is a distinction without a difference. The general

---

[8]The primary case that defendant relies on (*Love* v. *Wolf* (1967) 249 Cal.App.2d 822 [58 Cal.Rptr. 42]) appears to confuse these two meanings of "final judgment" (*id.* at p. 840); what is clearly correct, however, is its observation (*ibid.*) that "We find nothing in [former Probate Code section 573] which would require a reversal of a judgment merely because the successful plaintiff died while that judgment was on appeal."

Defendant also discusses early common law decisions from other states on the abatement of actions and the distinctions they drew between "appeals" and "writs of error" and between tort causes of action that sought to vindicate "personal rights" and those that did not. In light of the history of the legislation on survival of actions in this state and the explanatory comments of the drafters of that legislation, these cases are not persuasive.

statute providing for survival of actions applies "Except as otherwise provided by statute . . . ." (*Id.*, subd. (a).) The section now before us—section 377.34—is just such a statutory exception: by declaring that in an action brought under the general survival statute, the damages "are limited to" losses incurred before death and "do not include" damages for pain and suffering, section 377.34 provides in effect that causes of action do *not* survive to the extent that they include losses incurred after death or damages for pain and suffering. When, as here, the only damages at issue are for pain and suffering, to say that such damages are not recoverable is the functional equivalent of saying that Sullivan's causes of action against Delta did not survive his death after judgment.

Defendant next contends that section 377.34 applies when an action commenced by a decedent is "continued" after his death by his personal representative or successor in interest, and that an appeal is a "continuation" of an action within the meaning of the survival legislation. For this purpose, defendant relies on Code of Civil Procedure section 377.35 (hereafter section 377.35), which provides: "On or after January 1, 1993, this article applies to the commencement of an action or proceeding the decedent was entitled to commence, and to *the continuation of an action* or proceeding commenced by the decedent, regardless of whether the decedent died before, on, or after January 1, 1993." (Italics added.)

The statute is irrelevant to the question before us: It is merely a transitional provision that permits the new law to be applied retroactively to a temporally limited class of decedents. Defendant overlooks the repeated references in the statute to "January 1, 1993." That is the operative date of the 1992 survival legislation (Stats. 1992, ch. 178) that includes the article in which section 377.34 appears. Section 377.35 is the next and final section in that article; its sole purpose, as the commission explains in its accompanying comment, is to make clear that "as of the operative date, the procedures provided by this article apply regardless of the date of the decedent's death." (1992 Law Revision Com. Rep., *supra*, at p. 934.) Indeed, because the new article would normally apply in any event to all decedents who die *on or after* it takes effect, section 377.35 is in fact relevant only to the limited class of decedents who die *before* its operative date: As the commission further explains, under section 377.35 the successor in interest or personal representative of such a decedent may nevertheless institute an action on his behalf if the governing period of limitations has not run (Code Civ. Proc., § 366.1), and "an action commenced by a decedent who died before January 1, 1993, may be continued by a successor in interest or personal representative *as provided in this article*." (1992 Law Revision Com. Rep., *supra*, at p. 934, italics added.) The latter reference—i.e., "as provided in this article"—is to

Code of Civil Procedure section 377.31, which generally authorizes a decedent's personal representative or successor in interest to "continue" an action instituted by the decedent.

Finally, defendant contends that even if the phrase "before judgment" in former Probate Code section 573 is taken to mean "before final judgment" in the sense of an appealable judgment—as we conclude above—it would not save the damage award in the present case because the judgment herein was not final in that sense either. Rather, defendant argues, it was at most a premature, partial determination of the issues that could not be appealed without violating the one final judgment rule.[9] Because the contention turns on the unusual procedural facts of this case, we shall address it more briefly; as will appear, it is ultimately unpersuasive.

■ A judgment that disposes of fewer than all the causes of action framed by the complaint is not final in the fundamental sense as to any parties between whom another cause of action remains pending. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 741 [29 Cal.Rptr.2d 804, 872 P.2d 143].) This is such a case. The judgment purportedly rendered on May 10, 1994, did not dispose of the 10 causes of action on which defendant prevailed by jury verdicts or orders granting motions for summary judgment,[10] nor did it dispose of the sixth cause of action, which was set for retrial and thus remained pending between the parties.[11]

An appeal from a judgment that is not final violates the one final judgment rule and must therefore be dismissed (e.g., *Mather* v. *Mather* (1936) 5 Cal.2d 617, 618 [55 P.2d 1174]; *Cobb* v. *University of So. California* (1996) 45

---

[9]Plaintiff contends defendant waived this point by failing to raise it prior to the briefing in this court. Subject matter jurisdiction, however, cannot be conferred by waiver, consent, or estoppel. (*Summers* v. *Superior Court* (1959) 53 Cal.2d 295, 298 [1 Cal.Rptr. 324, 347 P.2d 668].) Even if defendant had not raised the point at all, we would have been bound to do so on our own motion if we had any doubt as to the finality of the judgment appealed from. (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 126 [32 Cal.Rptr.2d 275, 876 P.2d 1074].)

[10]Neither a verdict (*Robins* v. *Weis* (1950) 97 Cal.App.2d 144, 145 [217 P.2d 156]) nor an order granting a motion for summary judgment (*Integral Land Corp.* v. *Anderson* (1944) 62 Cal.App.2d 770, 771 [145 P.2d 364]) is appealable.

[11]Although both the trial court and the Court of Appeal erroneously referred to the pending trial of the sixth cause of action as a "new trial," it is in fact a "retrial." Under our statutes, "new trial" is a term of art referring only to a reexamination of an issue "after a trial *and decision* by a jury, court or referee." (Code Civ. Proc., § 656, italics added.) Here the jury reached no such "decision" on the sixth cause of action, and the court declared a mistrial. In that event a motion for a new trial will not lie (*Fennessey* v. *Pacific Gas & Elec. Co.* (1938) 10 Cal.2d 538, 541 [76 P.2d 104]); rather, the court may order that the action be "again tried"—i.e., it may order a "retrial"—pursuant to Code of Civil Procedure section 616. An order granting a mistrial because the jury failed to reach a verdict is not appealable. (*Estate of Bartholomae* (1968) 261 Cal.App.2d 839, 842 [68 Cal.Rptr. 332].)

Cal.App.4th 1140, 1146 [53 Cal.Rptr.2d 71]), unless the violation can be cured by amending the judgment. (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517, 523-524 [322 P.2d 933].) Here it can be so cured.

When "the trial court's failure to dispose of all causes of action results from inadvertence or mistake rather than an intention to retain the remaining causes of action for trial" (*Tenhet* v. *Boswell* (1976) 18 Cal.3d 150, 154 [133 Cal.Rptr. 10, 554 P.2d 330]), the appellate court has discretion to "preserve the appeal by amending the judgment to reflect the manifest intent of the trial court" (*Varjabedian* v. *City of Madera* (1977) 20 Cal.3d 285, 289, fn. 1 [142 Cal.Rptr. 429, 572 P.2d 43]; accord, *Molien* v. *Kaiser Foundation Hospitals* (1980) 27 Cal.3d 916, 921 [167 Cal.Rptr. 831, 616 P.2d 813, 16 A.L.R.4th 518]; *Shepardson* v. *McLellan* (1963) 59 Cal.2d 83, 88-89 [27 Cal.Rptr. 884, 378 P.2d 108]).

That rule is here applicable. The record establishes that the trial court did not deliberately reserve for future determination the ten causes of action on which defendant prevailed; on the contrary, the court entertained and ruled on defense motions for summary judgment as to seven causes of action and submitted the remaining three to the jury for decision. The court's failure to address these 10 causes of action in its ensuing judgment was thus plainly the result of inadvertence. Nor is there any doubt as to what the judgment would have provided on these causes of action: the court sustained the seven defense motions for summary judgment in question, and the jury returned defense verdicts on the remaining three causes of action. The omission of these 10 causes of action may therefore be cured by directing the judgment to be amended to reflect the rendition of judgment for defendant on each.

A different disposition is appropriate for the sixth cause of action. As long as that cause of action remained unresolved there was no final judgment from which defendant could appeal or which Sullivan could enforce. (See, e.g., *Cobb* v. *University of So. California, supra,* 45 Cal.App.4th 1140, 1143-1145.) At the time the retrial was ordered, however, Sullivan could have removed this impasse by voluntarily dismissing the sixth cause of action with prejudice. (Code Civ. Proc., § 581, subd. (b)(1) [dismissal before trial]; see *Schubert* v. *Bates* (1947) 30 Cal.2d 785, 788 [185 P.2d 793] [dismissal before trial includes dismissal before retrial, after reversal of judgment].) Acting in his stead, plaintiff in effect now does so: in her reply brief in this court, plaintiff declares that she "hereby waives any right to a retrial on the Sixth Cause of Action." When a party expressly waives on appeal the right to litigate an unresolved cause of action that deprived the judgment as entered of finality, the appellate court may give effect to the waiver by amending the judgment to reflect a dismissal of that cause of

action with prejudice. (*Roy Brothers Drilling Co.* v. *Jones* (1981) 123 Cal.App.3d 175, 180-181 [176 Cal.Rptr. 449].)

None of the foregoing omissions from the judgment, moreover, affect the sole issue addressed by the Court of Appeal and before us for review, viz., the correct construction of section 377.34. That issue has been fully briefed and argued, and it is ready for decision. In the circumstances, it is appropriate to exercise our discretion to direct that the judgment be amended in the foregoing respects in the interests of justice and to avoid unnecessary delay. (*Gombos* v. *Ashe*, *supra*, 158 Cal.App.2d 517, 524.) For the same reasons it is appropriate to direct that these amendments to the judgment take effect nunc pro tunc as of the date that the judgment was purportedly rendered. (See, e.g., *Dominguez* v. *City of Alhambra* (1981) 118 Cal.App.3d 237, 242 [173 Cal.Rptr. 345].)[12] Because Sullivan's death occurred after that date, defendant's contention must be rejected.

Defendant's remaining points seek to refute policy arguments advanced by plaintiff that we need not and do not address.

For the reasons stated (1) we reverse the judgment of the Court of Appeal; (2) we direct the Court of Appeal to amend the judgment of the trial court to reflect the rendition of judgment for defendant on counts 1, 3, 7, 8, 9, 10, 11, 12, 13, and 14, and the dismissal of count 6 with prejudice, all nunc pro tunc as of May 10, 1994; and (3) we direct the Court of Appeal to address the merits of the appeal, allowing the parties the opportunity to file supplemental briefs if they so request.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

**CHIN, J., Concurring.**—I would sign the majority opinion except that the majority decides an issue that we do not need to decide, and I am not sure it decides the issue correctly.

As the majority discusses (maj. opn., *ante*, at pp. 297-299), former versions of the survival statute that is now codified in Code of Civil Procedure section 377.34 barred "pain, suffering or disfigurement" damages only "[w]hen a [plaintiff] dies before judgment." In this case, the majority correctly reads this same limitation into the current version of the statute,

---

[12] In the cited case the Court of Appeal ordered *the trial court* to amend its judgment nunc pro tunc, but a Court of Appeal also has the power to amend a judgment directly. (E.g., *Gombos* v. *Ashe*, *supra*, 158 Cal.App.2d 517, 530.)

noting, among other things, that the Legislature enacted the current version intending no "substantive change." (Maj. opn., *ante*, at pp. 301-302.) Defendant argues that the phrase "before judgment" in the former versions meant before final judgment following all appeals. (Maj. opn., *ante*, at p. 303.) The majority correctly rejects this argument, but unnecessarily goes further, construing the phrase "before judgment" to have meant before a final appealable judgment. (Maj. opn., *ante*, at pp. 303-305.)

To be appealable, a judgment must dispose of all causes of action between the parties. (*Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 741 [29 Cal.Rptr.2d 804, 872 P.2d 143].) But this requirement evolved in the context of regulating appeals and does not necessarily extend outside that context. As the majority points out, "[I]t has long been recognized that 'No hard-and-fast definition of "final" judgment applicable to all situations can be given, since its finality depends somewhat upon the purpose for which and the standpoint from which it is being considered, and *it may be final for one purpose and not for another. . . .*' " (Maj. opn., *ante*, at pp. 303-304, original italics, citation omitted.) Thus, an interlocutory judgment disposing of some, but not all, causes of action is not appealable, but may be sufficient to preserve pain, suffering, or disfigurement damages that are part of that judgment. As a result of the nunc pro tunc amendment that the majority directs, the plaintiff in this case, Joseph A. Sullivan, died *after* a final appealable judgment. Thus, we do not need to decide the effect of a plaintiff's death *before* a final appealable judgment, but after an interlocutory judgment on some causes of action.

The issue is important. Not infrequently, a plaintiff suffers from a life-threatening condition. If a jury returns a verdict in the plaintiff's favor on some causes of action and cannot reach a verdict as to other causes of action, the plaintiff, under the majority's dictum, will have to forfeit his unresolved, but possibly meritorious, causes of action. Otherwise, he will risk dying before a final appealable judgment, in which case his heirs will lose the pain, suffering, or disfigurement damages the jury awarded him. The plaintiff might choose to litigate the unresolved causes of action, planning, if his condition suddenly worsens, to abandon those causes and ask for a judgment. One who adopts that course, however, might die suddenly and not be able to obtain the necessary dismissal and final judgment. Thus, the majority offers a dying plaintiff a cruel Hobson's choice, without stating any compelling policy justifying its decision.

In the context of construing the survival statute, the majority does not convince me that we should distinguish between an interlocutory judgment disposing of some causes of action and a final judgment disposing of all

causes of action. Because the court's statement with respect to this issue is only dictum, I encourage litigants to present the court with a case that raises the issue squarely so the court can reassess the merits of this dictum.