Norma J. VENERABLE, Mi'Shaye Venerable, Jhamon Venerable, Donald Venerable, Sr., and Donald Edward Venerable III, Plaintiffs,

v.

CITY OF SACRAMENTO, Arturo Venegas, Joseph Ellis, and Does 1–100 Defendants.

No. CIVS01–0369DFLJFM.

United States District Court, E.D. California.

Jan. 4, 2002.

John L. Burris, Oakland, CA, Andrew C. Schwartz, Walnut Creek, CA, for Plaintiffs.

Marcos Kropf, Sacramento City Attorney's Office, Sacramento, CA, for Defendants.

### MEMORANDUM OF OPINION AND ORDER

LEVI, District Judge.

This case arises from the shooting death of Donald Venerable, Jr. ("Venerable"), by police officers from the Sacramento City Police Department. Venerable's surviving family members filed suit against defendants, the City of Sacramento, Arturo Venegas, and Joseph Ellis. Defendants now move to dismiss all claims. Plaintiffs oppose the motion in part and seek leave to file a second amended complaint.

### I.

On February 9, 1999, police officers from the Sacramento City Police Department responded to a reported domestic dispute that involved Donald Venerable, Jr. and his wife Satanya Venerable. (Complaint at ¶ 11–13). In the course of responding to the incident, defendant Ellis shot Venerable after an attempt to subdue Venerable with a taser proved unsuccess-

ful. Venerable died from the gunshot either immediately or soon thereafter.

This action was filed on February 22, 2001[1] by plaintiffs Norma J. Venerable, the mother of decedent Donald Venerable, Jr., in her individual capacity; Norma J. Venerable as guardian ad litem of Donald Venerable's minor children, Mi'Shaye Venerable, Jhamon Venerable, and Donald Edward Venerable III; and Donald E. Venerable, Sr., the father of decedent, in his individual capacity. The complaint names as defendants the City of Sacramento; Arturo Venegas, individually and in his official capacity as Chief of Police for the City of Sacramento; Joseph Ellis, individually and in his official capacity; and Does 1 through 100. The complaint alleges five causes of action under 42 U.S.C. § 1983, including a *Monell* claim against the City, and a state law claim for wrongful death. Plaintiffs seek to recover for lost economic support, loss of society, comfort, attention, and support, and for the decedent's pain and suffering.

Defendants now move to dismiss the complaint on a variety of grounds for lack of subject matter jurisdiction and for failure to state a claim. *See* Fed.R.Civ.P. 12(b)(1), (6).[2]

## II. Parental Standing

Defendants make a number of challenges to Norma Venerable's standing to bring suit under § 1983 and California law.

### A. *Wrongful Death*

■ The California wrongful death statute provides in pertinent part:

A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf: (a) The decedent's surviving spouse, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse, who would be entitled to the property of the decedent by intestate succession. (b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents.

Cal. Civ. P.Code § 377.60. Norma Venerable, decedent's mother, has standing to maintain a wrongful death claim because she may be able to establish at trial that she was Venerable's dependent within the meaning of Cal. Civ. P.Code § 377.60(b). Further, Venerable's children are clearly successors in interest to Venerable and, therefore, may pursue a survival action in addition to a wrongful death claim. See Cal. Civ. P.Code § 377.30 (survival action may be commenced by decedent's successor in interest). Because Norma Venerable is the guardian ad litem for the children, (Venerable Decl. at ¶ 5), she is entitled to bring a survival action on their behalf. *See* Cal. Civ. P.Code §§ 372(a), 377.33.[3]

The motion to dismiss the wrongful death and survival actions on the basis of a lack of standing is denied.

---

1. An amended complaint was filed on March 27, 2001. All further references to the "complaint" are to the first amended complaint. While the motion to dismiss was pending, plaintiffs sought to file a second amended complaint.

2. Plaintiffs do not oppose dismissal of their equal protection and due process claims

against the federal government. (Opp. at 3 n. 2)

3. Plaintiffs' opposition concedes that Donald Venerable, Sr., decedent's father, may only be a party to the fourteenth amendment claim for deprivation of the right to familial association with his son. (Opp. at 4 n. 3).

## B. Substantive Due Process–Norma and Donald Venerable, Sr.

 It is well established in the Ninth Circuit that "a parent has a constitutionally protected liberty interest in the companionship and society of his or her child." *Ward v. City of San Jose*, 967 F.2d 280, 283 (9th Cir.1991). To recover for a violation under § 1983 for interference with familial rights, a plaintiff must show that the defendant acted with deliberate indifferent to these rights. *See Byrd v. Guess*, 137 F.3d 1126, 1134 (9th Cir.1998).

 In their first amended complaint, plaintiffs state that defendants "acted in reckless and callous disregard for the constitutional rights of Plaintiffs and the decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent and malicious." (Complaint at ¶ 32). This language is consistent with *Byrd* and meets the minimum pleading requirements. Thus, plaintiffs Norma Venerable and Donald Venerable, Sr. properly state a substantive due process claim and the motion to dismiss this claim is denied.

### III. Survival of Decedent's Pain and Suffering

Whether Venerable's § 1983 claim for pain and suffering survives his death raises a complicated question to which there is no clear answer.[4] Under California law the claim for these damages does not survive, and courts will normally look to state law to answer damages questions under § 1983 where federal law is silent. This procedure is set forth in § 1988(a).[5] However, state law may not be applied if "inconsistent with the Constitution and laws of the United States." 42 U.S.C. § 1988(a); *see Robertson v. Wegmann*, 436 U.S. 584, 590, 98 S.Ct. 1991, 1995, 56 L.Ed.2d 554 (1978). Some federal courts have concluded that the California law's failure to provide for survival of pain and suffering damages is inconsistent with § 1983.

Under the common law, personal injury claims abated on the death of the injured person or the defendant. California law followed the common law rule until 1949. "After at least a half century of debate and many unsuccessful legislative initiatives, California's first statute providing for the survival of personal tort actions was enacted in 1949." *Sullivan v. Delta Air Lines, Inc.*, 15 Cal.4th 288, 297, 63 Cal.Rptr.2d 74, 79, 935 P.2d 781 (1997). While overturning the common law rule of abatement, the new survivor statute did not permit damages for the deceased's pain and suffering, punitive damages, or prospective earnings after the date of death. The survival stat-

---

**4.** The Ninth Circuit has not addressed this issue. *See Smith v. City of Fontana*, 818 F.2d 1411, 1417 n. 7 (9th Cir.1987) (acknowledging but refusing to express an opinion on the issue). *But see Bass by Lewis v. Wallenstein*, 769 F.2d 1173, 1187–90 (7th Cir.1985) (refusing to apply statute similar to § 377.34 in § 1983 case).

**5.** Title 42 U.S.C. § 1988 provides in relevant part:

The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

ute was revised a second time in 1961 following a report by the California Law Revision Commission. *Id.* at 80, 935 P.2d 781. Acting on the recommendation of the Law Revision Committee, the revised statute permitted recovery of punitive damages in a survival action; however, no change was made to the exclusion of damages for pain, suffering or disfigurement. Cal. Prob.Code § 573(c). Finally, in 1992, the California legislature again revised the survival provisions, placing them in Cal. Civ. P.Code §§ 377.10–34. As before, this revision followed upon the recommendations of the Law Revision Commission. The Commission made no recommendation concerning the limitation on recovery of damages for pain and suffering and no change was effected in this respect. Cal. Civ. P.Code § 377.34.[6]

It is fair to conclude from this legislative history that the California legislature's adherence to a limitation on pain and suffering is neither the product of anachronistic formalism nor inattention, but represents a considered judgment as to the appropriate balance among a number of competing considerations. In this instance, the legislature apparently concluded that whatever increment of deterrence would be achieved by permitting a claim for pain and suffering to survive is outweighed by other considerations.

While one may disagree with the legislature's policy judgment, it is difficult to argue that the judgment is without a sound basis. The legislature could well conclude that recovery for the decedent's pain and suffering is not the better rule

given: (1) the uncertainty of testimony about how someone, now dead, suffered; (2) the provision for compensation to family survivors under the wrongful death statute for their own damages, including loss of companionship, and a natural reluctance to add as "compensation" the injury actually suffered by another; and, (3) the adequacy of deterrence already provided by the possible array of damages for negligent conduct leading to death whether those damages are sought under the survival statute or by way of a wrongful death action. *See* Cal. Civ. P.Code § 377.61 (family members may recover damages as "may be just"; punitive damages, loss of benefits, loss of companionship, and the value of future earnings are recoverable in a wrongful death action).[7]

Despite the modernization of California law, and the permission of survival actions for personal injury torts, some federal district courts have declined to apply the California limitation on recovery of a decedent's pain and suffering. These courts find that the deterrence provided in the California survival statute is inadequate and therefore inconsistent with § 1983. *See, e.g., Garcia v. Whitehead,* 961 F.Supp. 230, 233 (C.D.Cal.1997); *Williams v. City of Oakland,* 915 F.Supp. 1074 (N.D.Cal. 1996); *Guyton v. Phillips,* 532 F.Supp. 1154 (N.D.Cal.1981). *But see Garcia v. Superior Court of Los Angeles,* 42 Cal. App.4th 177, 49 Cal.Rptr.2d 580 (1996) (holding that Cal. Civ. P.Code § 377.34 does not conflict with § 1983 in case where constitutional violation caused decedent's

6. "In an action or proceeding by a decedent's personal representative or successor in interest on the decedent's cause of action, the damages recoverable are limited to the loss or damage that the decedent sustained or incurred before death, including any penalties or punitive or exemplary damages that the decedent would have been entitled to recover had the decedent lived, and do not include

damages for pain, suffering, or disfigurement." Cal. Civ. P.Code § 377.34.

7. Of course, there is also the deterrence provided by the criminal law. A law enforcement officer that decided to kill someone, rather than inflict a lesser wound, simply to avoid a possible civil claim for pain and suffering, could be prosecuted for homicide.

death). These courts reason that to deny pain and suffering damages when the injured person dies is to put the tortfeasor in a better position when the injury is the most severe. However, this paradox is frequently present in tort cases and it is inherent to the human condition; there are many occasions when death is cheaper than life, particularly life prolonged or supported by heroic medical efforts. Indeed, even the solution of permitting pain and suffering damages to survive would not avoid the perversity: a premium would then be placed on a quick death, and a more traumatic injury, rather than a longer and more painful death leading to greater damages.

If one were seriously to analyze whether permitting survival of a decedent's claim for pain and suffering would provide materially greater deterrence of § 1983 violations by law enforcement officers, the matter would be quite complex and require extensive empirical work. A host of questions would require answers: (1) In states that permit such awards, how much are they?; (2) Where such awards are permitted, what other damages are awarded and in what amounts?; (3) Is the incremental addition, if any, to the overall award of damages sufficient to affect law enforcement decision-making whether in the field or in other areas such as training, hiring, supervision, staffing and the like? (4) What are the full range of possible consequences—career, emotional, financial—to an individual officer whose negligent action leads to death as opposed to injury and what relative importance is it to the officer that the decedent may recover for pain and suffering in addition to other damages? (5) Do law enforcement officers weigh the extent of possible civil remedies in determining the amount of force to use in any particular threatening situation?

It is not at all obvious that the answers to these questions would suggest the need to include an award of pain and suffering for the decedent in addition to other possible damages in order to vindicate the purposes of § 1983. In the absence of reliable empirical evidence to the contrary, the court declines to adopt the cynical proposition that law enforcement officers generally prefer to run the risk of inflicting death than of merely maiming a victim because death cuts off a claim for pain and suffering by the decedent. As the Supreme Court noted in *Robertson*, "[a] state official contemplating illegal activity must always be prepared to face the prospect of a § 1983 action being filed against him. In light of this prospect, even an official aware of the intricacies of [state] survivorship law would hardly be influenced in his behavior by its provisions." 436 U.S. at 592, 98 S.Ct. 1991. And if deterrence is not demonstrably affected by the limitation on damages, nor is fair compensation implicated given that "[t]he goal of compensating those injured by a deprivation of rights provides no basis for requiring compensation of one who is merely suing as the executor of the deceased's estate." *Id.*

■ In light of the damages that are provided by the California survival and wrongful death statutes, the court finds that state law is not inconsistent with the Constitution and laws of the United States. Because state law does not permit recovery of a decedent's pain and suffering, Venerable's claim for pain and suffering from injury leading to death does not survive and will be dismissed.

## IV.

■ The Ninth Circuit "examine[s] the use of force to effect an arrest in light of the Fourth Amendment's prohibition on unreasonable seizures," *Deorle v. Rutherford*, 263 F.3d 1106, 1112 (9th Cir.2001), and not substantive due process. *See Graham v. Connor*, 490 U.S. 386, 109 S.Ct.

1865, 104 L.Ed.2d 443 (1989). Thus, plaintiffs' claim for excessive use of force is dismissed to the extent that it is based on the Fourteenth, as opposed to the Fourth Amendment.

## V.

 "Fourth Amendment rights are personal rights, which like other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Thus, plaintiffs' claims are dismissed to the extent that they vicariously assert the decedent's rights under the Fourth Amendment. However, the proposed second amended complaint clarifies any ambiguity on this point; the fourth amendment claim is brought by decedent's successors in interest and is, therefore, outside of the scope of the limitation imposed by *Rakas.* (*Id.*)

## VI.

"Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services of City of New York,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978). Further, "a claim of municipal liability under section 1983 is sufficient to withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." *Karim–Panahi v. Los Angeles Police Dep't,* 839 F.2d 621, 624 (9th Cir.1988); *see also Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507

U.S. 163, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (rejecting application of heightened pleading standard in municipal liability cases).

 Plaintiffs' complaint alleges that "it is the policy, practice, and custom of Defendants City of Sacramento and Venegas to negligently hire and retain police officers employed by the City. Plaintiffs further allege that it is the policy, practice and custom of Defendants city and Venegas to negligently train, supervise, and discipline police officers employed by the City with respect to interfacing with mentally ill persons, and with respect to reasonable and proper use of force, including deadly force." (Complaint at ¶ 41). Under *Karim–Panahi,* these allegations are sufficient to state a claim for municipal liability. Defendants' motion to dismiss the *Monell* claim is denied.

## VII.

The parties have filed a tolling agreement, therefore, all claims against Chief Venegas are dismissed without prejudice. (*See* Samuel L. Jackson Letter, October 5, 2001).

## VIII.

For the foregoing reasons defendants' motion to dismiss is GRANTED in part and DENIED in part. Plaintiffs' motion to file the second amended complaint is DENIED. Plaintiffs should consider the substance of this order and then determine whether to seek leave to file an amended complaint.

IT IS SO ORDERED.