[No. B219981. Second Dist., Div. One. May 20, 2011.]

LEENA ARESO, Plaintiff and Appellant, v.
CARMAX, INC., et al., Defendants and Respondents.

 

COUNSEL

Kingsley & Kingsley, Eric B. Kingsley, Elana R. Levine; Pine & Pine, Norman Pine and Janet R. Gusdorff for Plaintiff and Appellant.

Ogletree, Deakins, Nash, Smoak & Stewart, Jack S. Sholkoff, Christopher W. Decker and Mara B. Brandes for Defendants and Respondents.

OPINION

**JOHNSON, J.**—Leena Areso appeals from the trial court's grant of summary adjudication in favor of CarMax, Inc. (CarMax), in her class action lawsuit, which (among other causes of action) alleged violations of the Labor Code, including a failure to pay compensation for overtime. We affirm.

## BACKGROUND

Areso began working for CarMax on June 23, 2004, as a sales consultant trainee, and until July 18, 2004, she was classified as an hourly employee and was eligible for overtime pay.[1] On July 19, 2004, CarMax promoted Areso to sales consultant, with the primary job of selling CarMax's used vehicles, warranty plans, used vehicle appraisals, and vehicle accessories. CarMax classified Areso and other California sales consultants as "commissioned exempt salespersons." Areso received payments based on the products and services she sold, with a minimum guaranteed base pay, but Areso was not paid overtime. Areso worked for CarMax until June 7, 2005.

Until February 1, 2005, CarMax paid Areso and other sales consultants under its national pay plan, which included a uniform dollar payment for each sale of a vehicle, lease, appraisal purchase (purchasing a used vehicle from a customer), and extended service plan. The uniform payment for the sale of a vehicle was $150.[2] Sales consultants also were paid 10 percent of the purchase price for any accessories sold. CarMax adopted the $150 payment to avoid an incentive for its sales staff to push higher priced items to maximize their own commissions.

---

[1] The facts are taken from the parties' statements of undisputed material facts and from the trial court's order granting summary adjudication.

[2] Other uniform rates were $50 for each vehicle leased, $50 for each appraisal purchase, and $100 for each extended service plan sold.

In 2005, CarMax implemented a new pay plan for its sales consultants in California.[3] Under the California pay plan, CarMax paid Areso and other sales consultants pursuant to a formula which took into account the number of vehicles sold by a sales consultant (the "level") and the average price of the vehicles or other products sold, decreasing the percentage paid to the sales consultant as the average sale price increased, and providing for an adjustment if the base payment totaled less than the "target commissions." After these calculations, a sales consultant would earn the same uniform payment per vehicle, approximately $154, whether the average sale price of the vehicle sold was $40,000, $20,000, or $9,999.99. The sales consultants continued to receive the same percentage (10 percent) of the purchase price of any accessories sold. Like the national pay plan, the California pay plan was designed to avoid an incentive for sales consultants to push higher priced items.

Areso was a named plaintiff in a class action lawsuit filed on July 10, 2008, against CarMax, alleging that CarMax failed to pay overtime in violation of Labor Code section 1194, along with other allegations of violations of the Labor Code and the Business and Professions Code. CarMax filed a motion for summary adjudication, arguing that Areso's compensation under both the national pay plan and the California pay plan included payments which qualified under the "commissioned sales" exemption from the overtime pay requirement. Areso had undisputably earned more than one and a half times the minimum wage, and had received at least one half of her wages in "commissions," making her ineligible for overtime pay.

The trial court granted the motion for summary adjudication.[4] The court stated: "There is no material issue of fact under either pay plan that the employer paid the sales consultants either exactly $150 per vehicle sold (under the National Plan) or approximately $150 per vehicle sold (under the California Plan)." The court concluded that CarMax's compensation arrangement "is still a performance-based incentive system and thus fairly understood to be a commission structure" under Labor Code section 204.1.[5] The trial court also concluded that the $150 or $154 received by Areso for each vehicle, regardless of the price, was a "commission" under section 204.1

---

[3] CarMax states that its California pay plan was adopted "in response to concerns about uncertainties in the state of California law regarding the definition of a sales commission." The parties dispute exactly when in 2005 the California pay plan went into effect, but the month in which the new plan began is not material to the question on this appeal.

[4] The trial court's order granting summary adjudication, filed June 16, 2009, certified to this court the question of the interpretation of Labor Code section 204.1. After we summarily denied Areso's petition for writ of mandate under Code of Civil Procedure section 166.1, the trial court entered judgment on September 18, 2009.

[5] Unless otherwise indicated, all statutory references are to the Labor Code.

based on the "amount" rather than the "value" of vehicles sold, construing "amount" to mean the number of vehicles Areso sold.

The trial court entered judgment in favor of CarMax on Areso's first cause of action, the overtime claim, ordered that the second cause of action be dismissed with prejudice, and dismissed without prejudice Areso's third, fourth, fifth, and sixth causes of action.

Areso filed a timely appeal.

## DISCUSSION

I. *The grant of summary adjudication is appealable as a final judgment.*

■ The judgment reflects that the trial court granted CarMax's motion for summary adjudication of Areso's first cause of action and ordered dismissal without prejudice of Areso's third, fourth, fifth, and sixth causes of action.[6] "A judgment that disposes of fewer than all the causes of action framed by the complaint is not final in the fundamental sense as to any parties between whom another cause of action remains pending." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 307 [63 Cal.Rptr.2d 74, 935 P.2d 781].) While "an order granting summary adjudication is an intermediate order which is 'reviewable on appeal from the final judgment in the action' " (*Jacobs-Zorne v. Superior Court* (1996) 46 Cal.App.4th 1064, 1070 [54 Cal.Rptr.2d 385]), "if further judicial action is required for a final determination of the rights of the parties, the decree is interlocutory" (*ibid.*).

Generally, a voluntary dismissal without prejudice is not a final judgment appealable on the merits. (*Syufy Enterprises v. City of Oakland* (2002) 104 Cal.App.4th 869, 879 [128 Cal.Rptr.2d 808].) Nevertheless, if unresolved claims are "purely ancillary" to the cause of action disposed of on summary adjudication, there is " 'nothing further in the nature of judicial action on the part of the court essential to a final determination of the asserted rights of the respective parties,' " and the matter is appealable. (*Belio v. Panorama Optics, Inc.* (1995) 33 Cal.App.4th 1096, 1102 [39 Cal.Rptr.2d 737].) The fourth cause of action (waiting time penalties under § 203), the fifth cause of action (unfair competition under Bus. & Prof. Code, § 17200), and the sixth cause of action (penalties under Lab. Code, § 2699), all depend entirely upon Areso's

---

[6] Areso states in her opening brief that following summary adjudication of her first cause of action, she requested the dismissal without prejudice of the fourth, fifth, and sixth causes of action. The parties had earlier filed a stipulation on July 31, 2008, dismissing without prejudice the third cause of action. The third, fourth, fifth, and sixth causes of action were therefore voluntary dismissals without prejudice. The trial court dismissed with prejudice Areso's second cause of action (failure to provide meal breaks) on August 18, 2009.

overtime claim, and therefore all became moot once the trial court granted summary adjudication on that claim. (*Belio*, at p. 1102.)

■ The third cause of action, which alleged a failure to reimburse Areso for the purchase of required uniforms in violation of section 2802, is not dependent upon nor ancillary to her overtime claim. Nevertheless, in Areso's brief on appeal, she indicates that she no longer wishes to pursue that claim and asks us to amend the judgment to dismiss the third cause of action with prejudice. "When a party expressly waives on appeal the right to litigate an unresolved cause of action that deprived the judgment as entered of finality, the appellate court may give effect to the waiver by amending the judgment to reflect a dismissal of that cause of action with prejudice." (*Sullivan v. Delta Air Lines, Inc., supra,* 15 Cal.4th 288, 308–309.) We therefore exercise our discretion to preserve Areso's appeal by amending the judgment to reflect that the third cause of action was dismissed with prejudice.

The judgment is appealable.

II. *The payments are commission wages exempting CarMax from paying overtime.*

■ "We review an appeal from a grant of summary adjudication de novo. [Citation.] The moving party bears the burden of showing that there is no triable issue of material fact and that he or she is entitled to judgment as a matter of law. [Citation.] We view the evidence and reasonable inferences from the evidence in the light most favorable to the opposing party. [Citation.]" (*Harris v. Investor's Business Daily, Inc.* (2006) 138 Cal.App.4th 28, 36 [41 Cal.Rptr.3d 108] (*Harris*).) "[T]he assertion of an exemption from the overtime laws is considered to be an affirmative defense, and therefore the employer bears the burden of proving the employee's exemption." (*Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794–795 [85 Cal.Rptr.2d 844, 978 P.2d 2] (*Ramirez*).)

■ Section 510, subdivision (a) requires that eight hours of labor constitute a day's work, and any work in excess of eight hours in one day, 40 hours in one workweek, and the first eight hours worked on the seventh day of work in any workweek "shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." California Industrial Welfare Commission (IWC) wage order No. 7-2001[7] exempts from the overtime compensation requirement "any employee whose earnings exceed one and one-half (1 1/2) times the minimum wage if more than half of

---

[7] The Legislature defunded the IWC in 2004, but its wage orders remain in effect. (*Kettenring v. Los Angeles Unified School Dist.* (2008) 167 Cal.App.4th 507, 512, fn. 2 [84 Cal.Rptr.3d 196].)

that employee's compensation represents commissions." (Cal. Code Regs., tit. 8, § 11070, subd. (3)(D).) Labor Code section 204.1, applicable to employees of vehicle dealers such as CarMax, provides: "Commission wages paid to any person employed by an employer licensed as a vehicle dealer . . . are due and payable once during each calendar month . . . . *Commission wages* are compensation paid to any person for services rendered in the sale of such employer's property or services and *based proportionately upon the amount or value thereof.*" (Italics added.)[8] The issue squarely presented on this appeal is whether CarMax's payments to Areso of $150 (under the national plan) or $154 per vehicle (under the California plan), constitute commission wages "based proportionately on the amount or value" of CarMax's property or services sold, thus exempting CarMax from the overtime compensation requirement of the Labor Code.

Areso bases her contention that the payments are not commissions on a series of cases, beginning with *Keyes Motors, Inc. v. Division of Labor Standards Enforcement* (1987) 197 Cal.App.3d 557 [242 Cal.Rptr. 873] (*Keyes Motors*). In *Keyes Motors*, an employer that sold and serviced automobiles sought a declaration from the Department of Labor Standards Enforcement (DLSE) that its mechanics' compensation, which was based on a percentage of the hourly rate charged to the customer for repairs, constituted "commission wages." (*Id.* at p. 560.) DLSE responded that " 'commission' applied only to sales of 'big ticket' items," but the trial court, "[d]efining commission as 'a percentage of the money received in [the] transaction,' " found that the mechanics' receipt of a percentage of the hourly rate constituted commission wages. (*Id.* at p. 561.) Division Seven of this Appellate District disagreed: "We conclude Labor Code section 204.1 sets up two requirements, both of which must be met before a compensation scheme is deemed to constitute 'commission wages.' First, the employees must be involved principally in *selling* a product or service, not making the product or rendering the service. Second, the amount of their compensation must be a percent of the price of the product or service." (*Id.* at p. 563.) DLSE, as the body charged with administration of wage orders, had consistently treated as commissions only wages received by employees in sales positions. The mechanics did not engage in sales, so that they "fail the first part of the test, even assuming they may satisfy the second." (*Ibid.*)

In *Ramirez*, our Supreme Court granted review to determine the meaning of "outside salesperson," to determine whether an employee who performed

---

[8] We granted Areso's request for judicial notice of the legislative history of Senate Bill No. 972 (1967 Reg. Sess.), which in 1967 amended section 204 and added section 204.1. The legislative history indicates that section 204.1 was intended to give automobile dealers the right to pay employees commission wages on a monthly, rather than a biweekly, basis. (Sen. Lagomarsino, sponsor of Sen. Bill No. 972 (1967 Reg. Sess.), letter to Governor, Aug. 5, 1967, p. 2.) It does not illuminate the issue before us.

sales and delivery functions for a bottled water company was exempt from the overtime laws. (*Ramirez, supra,* 20 Cal.4th at pp. 794, 802.) After concluding that the IWC's definition of "outside salesperson" was not arbitrary or capricious, the court remanded the case for the trial court to make the factual determination whether Ramirez fit the definition. (*Id.* at pp. 801, 803.) The court also addressed the question of whether Ramirez was paid commissions. Stating that "[t]here would be no need to remand this case if we agreed with the trial court that Ramirez was a commissioned employee" (which was an independent basis to exempt him from the overtime statute), the court noted that section 204.1's definition of "commission," although specifically applying to employees of vehicle dealers, was "more generally applicable." (*Id.* at p. 803.) The court then quoted in full the *Keyes Motors* interpretation of section 204.1, and remanded the case for the trial court to determine "whether Ramirez's compensation could be characterized as 'a percentage of the price of the product or service,'" if the first condition, "whether Ramirez was 'involved principally in selling the product or service,'" was met. (*Ramirez,* at p. 804; see *Wayne v. Staples, Inc.* (2006) 135 Cal.App.4th 466, 478 [37 Cal.Rptr.3d 544] [applying *Keyes Motors* definition of "'commission wages'" to determine whether, under the Ins. Code, markup on shipping insurance was "a commission . . . or is simply 'profit'"]; *Takacs v. A.G. Edwards and Sons, Inc.* (S.D.Cal. 2006) 444 F.Supp.2d 1100, 1119 [citing *Ramirez* and *Keyes Motors* as requiring that to be a commission "[t]he amount of compensation must make up a percentage of the product or service's price"]; *Romero v. Producers Dairy Foods, Inc.* (E.D.Cal. 2006) 235 F.R.D. 474, 488 [same].)

Most recently, in *Harris,* Division Four of this Appellate District considered whether the commission exemption applied to exempt from the overtime requirement telemarketers who sold magazine subscriptions. The court quoted section 204.1's definition of commission as "'based proportionately upon the amount or value thereof,'" and stated that in *Ramirez* "the Supreme Court defined two essential requirements for finding that a compensation scheme involves commissions: (1) that the employees are involved in selling a product or service, and (2) that the amount of compensation is 'a percent of the price of the product or service.'" (*Harris, supra,* 138 Cal.App.4th at p. 37.) There was no doubt that the telemarketers sold a product, and "[w]hether all or part of their compensation may be characterized as a commission depends on whether they were paid on the basis of a percentage of the price of subscriptions sold." (*Ibid.*)

The Court of Appeal described the compensation system as follows: "The employees were paid on a point system based on the number of points earned. Employees received a certain number of points for each type of subscription sold. For example, an employee received 0.25 points for a 13-week subscription. Employees also received points for winning sales

contests, called 'spiffs,' and were eligible for fixed monetary bonuses if they sold a specified number of points at certain levels. As employees earned more points, the value of the points increased. Employees were paid $15.80 per point for the first 9.99 points earned, $22.30 for the next 20 to 16.99 points, and so on. *The point values were not tied to the price of the subscription sold.*" (*Harris, supra*, 138 Cal.App.4th at p. 37, italics added.)

The employees also presented an expert declaration "to demonstrate that the point system was not a commission compensation scheme." (*Harris, supra*, 138 Cal.App.4th at p. 37.) The declaration "concluded that the employees were paid 'on [a] combination of sales points, incentive points ("SPIFF"), adjustment points, an apparent qualitative point adjustment ("(Less) Points Over 25%"), 40/80 commission, daily graphs, adjustment amount, bonus, charge-backs, carried over deductions, and other factors.' " (*Ibid.*) The declaration further stated, " '[a] true commission basis would characteristically feature a commission amount that is directly related to the dollar amount of the product or services sold.' " (*Ibid.*)

The employer argued that compensation need not be "a percent of the product price to qualify as a commission payment," and that "commission compensation may be based on 'value,' a term that goes beyond price to include 'worth, merit and importance.' " (*Harris, supra*, 138 Cal.App.4th at p. 38.) The Court of Appeal rejected that argument: "As has been discussed, our Supreme Court has interpreted the statute to mean that the amount of compensation 'must be a percent of the price of the product or service.' (*Ramirez, supra*, 20 Cal.4th at p. 804.) We decline respondents' invitation to expand the meaning of the term." (*Harris, supra*, 138 Cal.App.4th at p. 38.) On the undisputed facts, the points were "based on the type of subscriptions sold. There was no showing that the points are tied to a particular price," and the expert's "declaration demonstrated that points received from bonuses, subscriptions, and sales contests were not based on the price of the subscriptions." (*Ibid.*) The court concluded, "the payments received by the employees did not constitute commissions" and the commission exemption did not apply. (*Ibid.*) The court went on to say that even if the point system constituted commissions, the employer had failed to demonstrate as a matter of law that more than half the employees' compensation came from the point system, or that the employees' total compensation was more than one and one-half times the minimum wage. (*Id.* at pp. 38–39.)

■ CarMax characterizes as dicta the statements that a commission must be "a percent of the price of the product or service." (*Keyes Motors, supra*, 197 Cal.App.3d at p. 563; see *Ramirez, supra*, 20 Cal.4th at p. 804; *Harris, supra*, 138 Cal.App.4th at p. 37.) " ' "It is axiomatic that language in a judicial opinion is to be understood in accordance with the facts and issues

before the court. An opinion is not authority for propositions not considered." ' [Citation.] 'An appellate decision is not authority for everything said in the court's opinion but only "for the points actually involved and actually decided." ' [Citation.]" (*People v. Knoller* (2007) 41 Cal.4th 139, 154–155 [59 Cal.Rptr.3d 157, 158 P.3d 731].) Mere observations by an appellate court are dicta and not precedent, unless a statement of law was "necessary to the decision, and therefore binding precedent[]." (*Krupnick v. Hartford Accident & Indemnity Co.* (1994) 28 Cal.App.4th 185, 199 [34 Cal.Rptr.2d 39].) " 'The doctrine of precedent, or stare decisis, extends only to the ratio decidendi of a decision, not to supplementary or explanatory comments which might be included in an opinion. To determine the precedential value of a statement in an opinion, the language of that statement must be compared with the facts of the case and the issues raised.' [Citation.]" (*Gogri v. Jack in the Box Inc.* (2008) 166 Cal.App.4th 255, 272 [82 Cal.Rptr.3d 629].) ■ "[W]e generally consider California Supreme Court dicta to be persuasive," but may reject dicta that "does not, in our opinion, 'reflect[] compelling logic.' " (*Ibid.*)

In *Ramirez*, the Supreme Court adopted the *Keyes Motor* language interpreting section 204.1, and remanded for the trial court to determine in the first instance whether Ramirez was involved in selling and, if so, whether his compensation was a percentage of the product price. (*Ramirez, supra,* 20 Cal.4th at p. 804.) This explicit endorsement of *Keyes Motor* is not a mere comment, but an instruction to the trial court to apply the two-part test. Further, in *Harris* the court of appeal *applied* the *Keyes Motor* test to employee compensation (based upon a "point system"), where it was undisputed that the employees sold a product. The court "conclude[d] that the payments received by the employees did not constitute commissions" and determined that the commission exemption did not apply. (*Harris, supra,* 138 Cal.App.4th at p. 38.) These statements are not dicta.

■ The *Keyes Motor* definition of "commission," however, does not control our case, as it does not exclude Areso's compensation from the ambit of section 204.1's definition of commission wages as "based proportionately upon the amount or value" (italics added) of the property or services sold. The *Keyes Motor* line of cases relies on the statute's plain language allowing commission wages to be based proportionately on the *value* (price) of the property or services sold by the employee. That same plain language provides an alternative determinative in this case: commission wages may be based proportionately on the *amount* (number) of property or services sold by the employee. The system CarMax used under both the national pay plan and the California pay plan (regardless of the computation method employed) compensated sales consultants with a uniform payment for each vehicle sold, which constitutes wages based proportionately on the amount of vehicles sold.

█ Section 204.1 on its face allows wages based on the number of items sold to be considered commission wages. None of the cases interpreting section 204.1 has involved a compensation system which, like CarMax's, compensates salespeople with a uniform payment for each item or service sold, and as a result no case has construed the word "amount" in the statute.[9] This is an issue of first impression, and new facts require new law.

Areso argues that CarMax's uniform payment is piece-rate compensation rather than commission compensation. Areso points out that the DLSE manual quotes *Keyes Motors* and defines commissions as compensation based on a percentage of the sale, while "a compensation plan which pays employees for the number of pieces of goods finished, the number of appointments made or the number of procedures completed, is based on a piece rate, not a commission rate; though such compensation plans often refer to the payment as 'commission'." (DLSE Enforcement Policies and Interpretation Manual (2002) § 2.5.4, pp. 2-2(a) to 2-3.) First, we afford no deference to the statement in the DLSE manual "because regulators did not properly adopt [the DLSE manual], making it nonbinding on courts." (*Arechiga v. Dolores Press, Inc.* (2011) 192 Cal.App.4th 567, 573, fn. 5 [121 Cal.Rptr.3d 654]; see *Martinez v. Combs* (2010) 49 Cal.4th 35, 50, fn. 15 [109 Cal.Rptr.3d 514, 231 P.3d 259].) Second, although we "may still independently determine whether a DLSE interpretation contains persuasive logic" (*United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001, 1011 [118 Cal.Rptr.3d 834]), the DLSE manual statement regarding piece work does not apply to this case. CarMax's compensation plan does not pay sales consultants for each piece of goods finished, each appointment made, or each procedure completed. All those activities would by definition fall outside of section 204.1, because the statute's definition of "[c]ommission wages" applies only to *sales* of property or services. (*Keyes Motors, supra,* 197 Cal.App.3d at p. 563.) Here, we deal with the sale of property— automobiles—which would not constitute piece work, even if the DLSE manual's definition had persuasive force.

Areso also points to a 1993 DLSE opinion letter citing the *Keyes Motor* definition of commission. "Agency advice or opinion letters are not characterized as underground regulations violative of the [Administrative Procedure Act] and therefore may properly be considered." (*United Parcel Service Wage & Hour Cases, supra,* 190 Cal.App.4th at p. 1011.) "While the DLSE's construction of a statute is entitled to consideration and respect, it is not

---

[9] *Harris* involved a compensation system based on points, which varied depending on the type of subscription sold, were also awarded for winning sales contests, and whose value increased as employees earned more points. (*Harris, supra,* 138 Cal.App.4th at p. 37.) The employer argued that the points constituted commissions based on " 'value' " in section 204.1, meaning not price, but " 'worth, merit, or importance.' " (*Harris,* at p. 38.) This is far from a system such as CarMax's, which awards a uniform $150 or $154 for each vehicle sold.

binding and it is ultimately for the judiciary to interpret [the] statute." (*Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7 [56 Cal.Rptr.3d 880, 155 P.3d 284].) The 1993 letter does not affect our analysis, however, because it cited *Keyes Motors* only in the process of determining that an employee was not engaged primarily in sales (as the parties agree is required for the application of § 204.1), as the employee was "engaged 'primarily' in the teaching of golf, not in the sale of the service." (DLSE Opn. Letter No. 1993.02.22-1 (Feb. 22, 1993) p. 1, fn. 1.)

■ Areso urges us to consider the purpose of the overtime laws, which includes spreading employment throughout the workforce by putting pressure on the employer and fostering a stable job market, as well as "the important public policy goal of protecting employees in a relatively weak bargaining position against ' "the evil of 'overwork.' " ' [Citation.]" (*Gentry v. Superior Court* (2007) 42 Cal.4th 443, 456 [64 Cal.Rptr.3d 773, 165 P.3d 556]; see § 90.5, subd. (a).) Areso does not explain, however, how the purpose of the overtime laws would be better served by limiting "commission wages" to compensation based on a percentage of the price of vehicles sold, rather than including in "commission wages" a uniform payment for every vehicle sold. Rather than providing an incentive to its sales consultants to sell a higher priced vehicle, CarMax has chosen a compensation system that provides the same reward for selling a vehicle, regardless of price. We do not see how that threatens public policy, and Areso offers no reason why CarMax's system of a uniform payment for each vehicle sold would lead to more "overwork" than a compensation system in which a commission is based on a percentage of price. Nor does our conclusion, which is based on the plain language of the statute, conflict with the principle that "exemptions from statutory mandatory overtime provisions are narrowly construed." (*Ramirez, supra,* 20 Cal.4th at p. 794.)

We disagree with Areso that calling a uniform payment per vehicle sold a commission reads the word "proportionately" out of the statutory definition of commission wages as "based *proportionately* upon the amount or value thereof." (§ 204.1, italics added.) Paying salespeople a uniform fee for each vehicle is proportionate—a one-to-one proportion. The compensation will rise and fall in direct proportion to the number of vehicles sold.[10]

---

[10] Although it is not necessary to our decision, we note that nothing in section 204.1 or in case law requires a commission which is a percentage of the value or price of a sold item to be calculated according to a percentage which remains fixed regardless of the price of the item. In that light, we point out that the uniform payment Areso received for each vehicle sold *was* unarguably a "percentage," albeit variable, of the sales price of each vehicle. We also note that part of Areso's compensation—the 10 percent of the purchase price of accessories—was undisputedly a fixed (rather than variable) percentage of the value or price of the item sold. There is, however, no contention that the percentage commission for the sale of accessories constituted a significant enough portion of Areso's pay to trigger the exemption from overtime.

█ CarMax's uniform payment for each vehicle sold constitutes commission compensation under section 204.1.

## DISPOSITION

The judgment is amended to dismiss the third cause of action with prejudice. The judgment is affirmed as amended. Costs are awarded to respondents.

Mallano, P. J., and Chaney, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 31, 2011, S194365.