Filed 5/14/26  Safety-Kleen Solvent Cases CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| SAFETY-KLEEN SOLVENT CASES | B331176 |
| MICHAEL BREUNING et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> SAFETY-KLEEN SYSTEMS, INC., et al., <br><br> Defendants and Respondents. | (JCCP 4601; <br> Los Angeles County Super. <br> Ct. No. BC460754) |
| STUART RONALD MURPHY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SAFETY-KLEEN SYSTEMS, INC., <br><br> Defendant and Appellant. | (JCCP 4601; <br> Los Angeles County Super. <br> Ct. No. 19STCV38830) |

APPEAL from judgments of the Superior Court of Los Angeles County, William F. Highberger, Judge.  Affirmed.

Metzger Law Group, Raphael Metzger, Scott P. Brust, and Brian P. Barrow for Plaintiffs and Appellants.

Edlin Gallagher Huie & Blum, Jeremy D. Huie; Harris Beach Murtha Cullina, Daniel R. Strecker, and Brian D. Ginsberg for Defendant, Appellant, and Respondent Safety-Kleen Systems, Inc.

Jones Day, Edward Patrick Swan, Jr.; Trails Law Group, Stefanie Warren; Complex Appellate Litigation Group, Johanna Schiavoni, and Melanie Gold for Defendant and Respondent Petro Source Investments, Inc.

Wilson, Elser, Moskowitz, Edelman & Dicker, Robert Cooper, and Daniel S. Hurwitz for Defendant and Respondent BC Stocking Distributing.

————————————————

Michael and Rebecca Breuning and Stuart Ronald Murphy (collectively plaintiffs) appeal from judgments entered in favor of Safety-Kleen Systems, Inc. (Safety-Kleen), Petro Source Investments, Inc. (Petro Source), and BC Stocking Distributing (BC Stocking) on their tort claims based on occupational exposure to toxic chemicals in a Safety-Kleen solvent. Both the Breunings' and Murphy's actions were part of Judicial Council Coordinated Proceedings that were established in 2009, *Safety-Kleen Solvent Cases* (Super. Ct. L.A. County, JCCP4601). Plaintiffs argue the trial court erred in granting the defendants' motions in limine seeking exclusion at trial of deposition testimony taken in 1998 for a separate case. The trial court determined the deposition testimony was hearsay to which no exception applied, including the exception for former testimony under Evidence Code

section 1291, subdivision (a)(2) (section 1291(a)(2)),[1] as the California Supreme Court recently interpreted that exception in *Berroteran v. Superior Court* (2022) 12 Cal.5th 867 (*Berroteran*). We agree and affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Breuning Lawsuit*

The Breunings filed their lawsuit in May 2011.  In their first amended complaint, the Breunings alleged causes of action against Safety-Kleen, Petro Source, and BC Stocking for negligence, strict liability for warning defect, strict liability for design defect, fraudulent concealment, breach of implied warranties, and loss of consortium.  The Breunings alleged that, through his work as an automotive mechanic from 1975 to 1991, Michael was exposed to Safety-Kleen's solvents containing various toxic chemicals.  They alleged that, as a result of this exposure, Michael developed urinary tract disease, including glomerulonephritis and kidney failure.  The Breunings further alleged that the defendants knew of and fraudulently concealed the nature and hazards of the chemicals to which Michael was exposed.

In August 2021, the trial court (Judge Amy D. Hogue) addressed the admissibility at trial of testimony from 23 depositions of current and former Safety-Kleen employees taken in 1998 during discovery in *Talley v. Safety-Kleen Corporation* (Super. Ct. Orange County, 1999, No. 784605) (*Talley*).  Relying on the Court of Appeal's (since reversed)

---

[1]     Undesignated statutory references are to the Evidence Code.

decision in *Berroteran v. Superior Court* (2019) 41 Cal.App.5th 518, reversed in *Berroteran, supra*, 12 Cal.5th 867, the court ruled the deposition testimony was not inadmissible hearsay as to Safety-Kleen under section 1291, the hearsay exception for former testimony offered against a party to a former proceeding, and as to the other defendants under section 1292, the hearsay exception for former testimony offered against a party that was not a party to the former proceeding.

After the Supreme Court reversed the Court of Appeal and decided *Berroteran, supra*, 12 Cal.5th 867, Safety-Kleen filed a new motion in limine in November 2022 to exclude at trial the deposition testimony from the *Talley* case. It argued that, under the multi-factor test set forth in *Berroteran*, the Breunings did not satisfy the hearsay exception for former testimony under section 1291(a)(2) because Safety-Kleen did not have the right and opportunity to cross-examine the *Talley* deponents with an interest and motive similar to that which Safety-Kleen would have at the Breunings' trial. Safety-Kleen also argued the testimony was not admissible as party opponent admissions under sections 1220 and 1222 because section 1291(a)(2) controlled the admissibility determination and, even if it did not, Safety-Kleen Corporation, the defendant in *Talley* and the employer or former employer of the deponents, was a distinct corporate entity that was dissolved as part of a bankruptcy reorganization in 2003 and thus was not a party to the Breuning matter.

Petro Source and BC Stocking joined in Safety-Kleen's motion. They also asserted neither of them was a party to the *Talley* action. They acknowledged that some of the *Talley* depositions had been cross-noticed in two related cases against

4

Safety-Kleen for which they were also named defendants: *Montiel v. Safety-Kleen Corporation* (Super. Ct. L.A. County, No. EC022324) and *Rivas v. Safety-Kleen Corporation* (Super. Ct. L.A. County, No. VC026692). However, Petro Source and BC Stocking asserted they had never received notice for or appeared at any of the depositions.

In opposition, the Breunings argued the *Talley* depositions were admissible (1) pursuant to the former testimony hearsay exception under section 1291(a)(2) and *Berroteran*, because the *Talley* deponents were located out of state, some were cross-examined, and the depositions were videotaped, (2) under sections 1220 and 1222 as admissions of a party opponent and its authorized representatives, and (3) as nonhearsay evidence meant to prove what Safety-Kleen knew or should have known at the time of the depositions.

In January 2023, after a hearing, the trial court (Judge William F. Highberger) granted the motion in limine. The court concluded that the Breunings had not carried their burden to show the *Talley* depositions were admissible under section 1291(a)(2) and that this provision governed the admissibility of testimony from a former proceeding, not the other asserted hearsay exceptions.

The Breunings then sought to designate the same testimony from the *Talley* depositions that had been presented at trial over Safety-Kleen's objection in 2012 in *Gillan v. Safety-Kleen Systems Inc.* (Super. Ct. L.A. County, 2012, BC358325) (*Gillan*).[2] In March 2023, Safety-Kleen (again joined by Petro

---

[2]     Safety-Kleen had objected to admission of the evidence based on section 1291(a)(2). *Gillan* resulted in a mistrial during the plaintiffs' case-in-chief.

Source and BC Stocking) filed a motion in limine seeking exclusion at the Breunings' trial of the *Gillan* trial excerpts consisting of the *Talley* depositions.

The Breunings opposed the motion as they did the prior motion, arguing the deposition testimony that was admitted at the *Gillan* trial was admissible under Evidence Code sections 1291(a)(2), 1220, and 1222.  The Breunings also contended for the first time that the deposition testimony was admissible under Code of Civil Procedure section 2025.620, which addresses use of depositions at trial.

In April 2023, after a hearing, the court granted the defendants' motion on the same grounds as the previous motion in limine.  The court concluded "[i]t would be an egregious error to allow any of these archaic and incomplete discovery transcripts to be used at trial."

After the court granted the second motion, the parties agreed to advance the trial date, and the court called the case for trial.  With the Breunings' consent, Safety-Kleen moved for judgment in its favor on the ground that the Breunings lacked evidence to make out a prima facie case on each of their causes of action.  Petro Source and BC Stocking joined the motion.  The Breunings noted their objection to the court's in limine rulings but conceded that "as a practical matter" they could not prove their case without the excluded deposition testimony.  The court granted Safety-Kleen's motion and later entered separate judgments in favor of Safety-Kleen, Petro Source, and BC Stocking.

The Breunings appealed from the judgments.

B.    *The Murphy Lawsuit*

In October 2019, Murphy filed a complaint alleging causes of action against Safety-Kleen for negligence, strict liability for warning defect, strict liability for design defect, fraudulent concealment, and breach of implied warranties.[3]  Represented by the same counsel that represented the Breunings, Murphy alleged he developed end stage renal disease as a result of his exposure to toxic chemicals in Safety-Kleen solvents through his employment as a laborer, technician, and engineer between 1980 and 1995.  He further alleged Safety-Kleen knew of and fraudulently concealed the nature and hazards of the chemicals to which he was exposed.

In May 2023, Safety-Kleen filed a motion in limine seeking exclusion of the *Talley* depositions and the *Gillan* trial excerpts consisting of those depositions.  Safety-Kleen argued the evidence should be excluded under section 1291(a)(2) and *Berroteran* as it was in the Breuning matter, explaining the facts of Murphy's case were essentially identical to those at issue there.

In lieu of filing his own opposition, Murphy asked the court to take judicial notice of the Breunings' opposition briefs to Safety-Kleen's motions in limine regarding the *Talley* depositions and *Gillan* trial excerpts, the corresponding declarations, and "[a]ll other pleadings in the *Safety-Kleen Solvent Cases* (JCCP No. 4601), especially the *Breuning* case (No. BC460754) that contain any briefing and evidence that relates or may relate to Safety-Kleen's motions."  Murphy further acknowledged that he expected the court would make the same ruling as in the

---

[3]    Murphy's complaint named other defendants, including BC Stocking and Petro Source, but they were dismissed.

7

Breuning matter and indicated that, if it did so, he would likewise agree to advance the trial date and facilitate an adverse judgment so he could expedite an appeal. Safety-Kleen opposed Murphy's requests for judicial notice but argued that if granted, notice also should be taken of its replies in support of the motions in limine in the Breuning matter.

At the June 2023 hearing, the court took judicial notice of the oppositions to and replies in support of the in limine motions in the Breuning matter but otherwise denied Murphy's judicial notice requests. The court granted Safety-Kleen's motion in limine, citing its reasoning in granting Safety-Kleen's motions in limine in the Breuning matter.

The court advanced the trial date and called the case for trial; Safety-Kleen then moved for judgment on the ground that Murphy lacked admissible evidence to make out a prima facie case on each of his causes of action. Murphy consented to the motion being presented and heard in this manner. The court granted the motion and later entered judgment in favor of Safety-Kleen.

Murphy appealed,[4] and Safety-Kleen cross-appealed to challenge the court's ruling granting Murphy's request for judicial notice.

---

[4]     The Breunings and Murphy together filed one notice of appeal purporting to appeal from the respective judgments in their individual cases. Because cases in Judicial Council Coordinated Proceedings remain separate actions with separate judgments (Cal. Rules of Court, rule 3.545(c)), plaintiffs each should have filed a separate notice of appeal and then moved to consolidate the appeals. Nevertheless, we conclude we have jurisdiction because the notice of appeal referred to both superior court case numbers and the judgments in each of those cases.

## DISCUSSION

Plaintiffs contend the trial court erred in granting the motions in limine regarding the *Talley* depositions and the *Gillan* trial excerpts consisting of the *Talley* deposition testimony. Because the parties do not distinguish between the analysis of the admissibility of the deposition testimony and the *Gillan* trial excerpts consisting of that testimony we too will consider the appeal as raising a single issue regarding the admissibility of the *Talley* depositions.

### A.    *Standard of Review*

We generally review rulings on the admissibility of evidence, including under section 1291, for abuse of discretion. (See, e.g., *Bowser v. Ford Motor Co.* (2022) 78 Cal.App.5th 587, 622 (*Bowser*); see also *McMillan Companies, LLC v. American Safety Indemnity Co.* (2015) 233 Cal.App.4th 518, 529 ["Like many evidentiary rulings, orders on motions in limine are generally reviewed for abuse of discretion."].)  " ' "Under this standard, a trial court's ruling will not be disturbed, and reversal of the judgment is not required, unless the trial court exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' " (*Qaadir v. Figueroa* (2021) 67 Cal.App.5th 790, 803.)

Notwithstanding the general rule, plaintiffs contend we should use the more rigorous standard of review applicable to an order granting a nonsuit because the trial court's rulings on the motions in limine excluded "the bulk of the evidence" upon which they based their claims.  Plaintiffs rely on *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15 (*Edwards*).  In *Edwards*, the motions in limine "were not directed to particular

9

items of evidence" but instead "constituted an objection to any and all evidence." (*Id.* at p. 27.) As a result, the court explained that the order granting the motions at the outset of trial was "the functional equivalent of an order sustaining a demurrer to the evidence, or nonsuit." (*Ibid.*)

Here, however, Safety-Kleen's objection was to particular evidence—testimony given in the *Talley* depositions—not all possible evidence supporting plaintiffs' claims. Unlike in *Edwards*, the in limine rulings here were made while discovery was still open, thus providing plaintiffs an opportunity to further investigate and develop evidence supporting their claims. Given these differences, the rulings here did not have the effect of a nonsuit, and we review them for abuse of discretion. (See *Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 51 [exclusion of two discrete categories of evidence—opinion testimony and hearsay regarding the source of a defective hay bale—but not all possible evidence supporting the plaintiff's claims was not equivalent to a nonsuit for which heightened standard of review applied].)

B. *The Trial Court Did Not Abuse Its Discretion in Excluding the* Talley *Depositions in the Cases Against Safety-Kleen*

1. *The trial court did not abuse its discretion in finding the deposition testimony inadmissible under section 1291(a)(2)*

Under section 1291(a)(2), "evidence of former testimony is not made inadmissible by the hearsay rule" if the declarant is

unavailable[5] and the former testimony is offered against a party that "was a party to the action or proceeding in which the testimony was given and had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which" it would have at trial in the present case. (§ 1291(a)(2); see *Berroteran*, *supra*, 12 Cal.5th at p. 882.) "For example, if a series of cases arises involving several plaintiffs and but one defendant, Section 1291 permits testimony given in the first trial to be used against the defendant in a later trial if the conditions of admissibility stated in the section are met." (Cal. Law Revision Com. com. ¶ 1, 29B pt. 5 West's Ann. Evid. Code (2015 ed.) foll. § 1291.)

In *Berroteran*, the Supreme Court resolved a split among the Courts of Appeal on the application of section 1291(a)(2) to deposition testimony taken in a prior proceeding. (See *Berroteran*, *supra*, 12 Cal.5th at p. 875; § 1290, subd. (c) ["former testimony" includes "testimony given under oath" in a "deposition taken in compliance with law in another action"].) *Berroteran* involved a prior federal class action against Ford Motor Company regarding alleged defects in Ford's diesel engines, from which many possible class members, including Berroteran, opted out to pursue their own suits against Ford. (*Berroteran*, at pp. 875, 878.) In the class action and subsequent related litigation in California, nine out-of-state Ford employees or former employees gave videotaped depositions regarding Ford's knowledge and concealment of the defects. (*Id.* at pp. 876, 878-880.) Ford designated some of the deponents as persons most qualified. (*Id.*

---

[5]    The parties do not dispute that the *Talley* deponents were unavailable to testify at either the Breuning or Murphy trials.

at p. 879.)  After Berroteran sought to designate testimony from those depositions to use at his trial, Ford moved in limine to exclude the evidence pursuant to section 1291(a)(2).  (*Berroteran*, at pp. 876, 881-882.)  The trial court granted the motion to exclude, but the Court of Appeal granted Berroteran's petition for a writ of mandate and directed the trial court to reverse the order.  (*Id.* at p. 876.)

The Supreme Court reversed the Court of Appeal. (*Berroteran*, *supra*, 12 Cal.5th at p. 887.)  The court held section 1291(a)(2) "articulates a general rule ([but] not a categorical bar) against admission at trial of prior testimony from a typical discovery deposition." (*Berroteran*, at p. 889.)  "Although depositions are sometimes conducted to preserve the testimony of a witness for trial, many are commonly conducted for the purpose of discovery.  ...  A discovery deposition … is normally intended as a *precursor* to trial testimony—not as a substitute for such testimony." (*Id.* at p. 892.)  Unlike at trial, "there is no fact-finding audience at a deposition, and persuasion is ordinarily a secondary consideration.  Rather, the goal of an opposing party at a discovery deposition is typically to 'get a "fix" on' adverse witness testimony to be expected at trial [citation], without unduly aiding the deposing party's discovery efforts." (*Ibid.*)

Thus, "the 'interest and motive' of the party opponent in cross-examination at a discovery deposition is generally *not*, as required by section 1291(a)(2), similar to that prevailing at trial." (*Berroteran*, *supra*, 12 Cal.5th at p. 892.)  To the contrary, "[t]he interest and motive of an opposing party at a discovery deposition is ... often *against* cross-examination of the witness, in order to avoid assisting the deposing party" by prematurely revealing potential weakness in the witness's testimony or in the opposing

12

party's case.  (*Id.* at p. 892.)  Further, even if in theory there were an interest and motive for cross-examination by the opposing party at a discovery deposition, it is often not practical to conduct full and effective cross-examination at a deposition because discovery may be incomplete and the evidentiary record not yet fully developed.  (*Id.* at pp. 892-893.)  Hence, there is a general rule against admission at trial of prior testimony from a typical discovery deposition.  (*Id.* at p. 894.)

However, the party seeking admission of deposition testimony from a prior proceeding can rebut this general rule by producing "persuasive evidence" showing "the deposition sought to be introduced, unlike a typical discovery deposition, featured circumstances that provided the party opponent with an interest and motive for cross-examination similar to that at trial," such that it satisfies the requirements of section 1291(a)(2).  (*Berroteran*, *supra*, 12 Cal.5th at pp. 894-895.)  In determining whether former deposition testimony should be excluded under the statute, the court must "conduct a factually intensive inquiry" that starts with asking whether the parties either "intended, at the outset, that the deposition serve as trial testimony" or "subsequently reached agreement concerning use of the deposition at trial in that case, or in other cases."  (*Id.* at pp. 900-901; see *ibid.* [if "the parties manifested an intent to take the deposition for the purpose of preserving the witness's testimony as a proxy for trial testimony," "it may be inferred that all counsel had, at that deposition, a right and opportunity to examine the declarant with an interest and motive similar to that which the party would have at trial in a future case—and hence this key requirement of section 1291(a)(2), would, as general matter, be satisfied"].)  In circumstances "in which it is not

13

evident that the parties understood that a deposition was intended for purposes other than discovery, the resulting testimony is … generally not made admissible by section 1291(a)(2)." (*Berroteran*, at p. 901.)

In the absence of such an understanding, the proponent seeking to rely on the deposition testimony may still carry its burden to demonstrate the opposing party had the required interest and motive to cross-examine based on "various practical considerations," including: (1) the "timing of the deposition within the context of the litigation, and special circumstances creating an incentive for cross-examination," such as the deposition taking place "after the parties have been educated by discovery conducted in earlier, similar lawsuits" or in anticipation of a mediation or settlement conference; (2) whether the deponent and the opposing party were close or aligned such that the opposing party would likely not have found it necessary to cross-examine; (3) circumstances that would have given the objecting party a reason to anticipate the deposition might be a proxy for trial testimony, such as the witness's ill health or lack of amenability to subpoena; (4) "[c]onduct at, and surrounding, the deposition[,] and the degree of any examination conducted by the opposing party," such as "searching examination" that suggests "testimony preservation was among the purposes of the deposition"; (5) "particular designated testimony" showing the opposing party had an interest and motive to cross-examine concerning specific testimony; and (6) similarity of the objecting party's position in the two lawsuits. (*Berroteran, supra,* 12 Cal.5th at pp. 901-903.)  The court emphasized this last factor was not dispositive but was just one of the practical considerations in determining if the objecting party had a

similarity of interest and motive to cross-examine. (*Id.* at pp. 903-904, citing Cal. Law Revision Com. com. ¶ 4, 29B pt. 5 West's Ann. Evid. Code, *supra*, foll. § 1291, pp. 86-87.)

Plaintiffs' counsel, who also took the *Talley* depositions, confirmed to the trial court that there was no agreement between the parties in *Talley* that the depositions would be used for that trial or any other. Counsel added that Safety-Kleen "would not stipulate to any such thing." While plaintiffs assert on appeal that the *Talley* parties all "intended," "understood," and "knew" the depositions would be used at trial, they offer no support in the record for these assertions.

Turning to practical considerations that could support a conclusion that during the depositions Safety-Kleen had a similar interest and motive to cross-examine the deponents as it would at plaintiffs' trials, plaintiffs have failed to respond to Safety-Kleen's evidence showing there were substantive factual differences between the claims in plaintiffs' cases and those in *Talley*. The Breunings alleged Michael suffered from kidney disease as a result of exposure to Safety-Kleen's solvents between 1975 to 1991. Murphy alleged he suffered a kidney disease from solvent exposure between 1980 and 1995. In *Talley*, the plaintiff alleged he suffered acute myeloid leukemia, a form of cancer of the blood and blood-forming organs, based on exposure to solvents between 1988 and 1996. Moreover, the *Talley* plaintiff alleged his condition was caused by benzene, whereas plaintiffs alleged their conditions were caused by many toxic chemical constituents in addition to benzene. Even if there was some overlap, it was reasonable for the trial court to question if a party in a case focused on the development of leukemia based on exposure to benzene from 1988 to 1996 would have an interest

15

and motive to cross-examine in the manner of a party defending at trial, 25 years later, cases focused on the development of a kidney disease based on exposure to benzene and non-benzene constituents from 1975 to 1995.

Plaintiffs also have not demonstrated the timing and circumstances surrounding the *Talley* depositions created the required interest and motive in cross-examination. The depositions were taken between February and November 1998, while the *Talley* plaintiff's deposition was not taken until April 1999 and expert discovery continued into June 1999 before the case settled that month. Because the depositions were taken earlier in the case, the trial court could reasonably conclude Safety-Kleen would not have been equipped to conduct full and searching cross-examination at the time. (See *Berroteran*, 12 Cal.5th at pp. 892-893.)

Plaintiffs suggest that at the time of the *Talley* depositions Safety-Kleen was aware it was under criminal investigation and that bankruptcy proceedings were imminent, and as a result many of its employees were leaving the company—circumstances that would have caused Safety-Kleen to have an interest in cross-examining the current and former employees sitting for depositions. Plaintiffs rely on the facts that the Securities and Exchange Commission filed a complaint against Safety-Kleen in 2002 and Safety-Kleen declared bankruptcy in 2000. However, plaintiffs fail to cite any evidence to suggest Safety-Kleen was aware of these impending events when the *Talley* depositions were taken in 1998 or that consideration of these future events informed its approach to defending the depositions.

Plaintiffs also argue the "potential future unavailability" of the *Talley* deponents at trial generated a strong interest in and

16

need for cross-examination at the depositions. While they assert Safety-Kleen "knew that the witnesses—all residents of Illinois— would not be testifying live at trial in California," plaintiffs again identify no evidence supporting their assertion. They do not show any deponent stated he or she would not or could not appear at trial. And even if the deponents were located out of state, nearly half were employees of Safety-Kleen at the time of their depositions, and the others were former employees. While Safety-Kleen could not guarantee its employees would remain in its employ or order the former employees to appear at trial, plaintiffs point to no evidence suggesting the relationships between Safety-Kleen and the deponents were anything but close and aligned. As the trial court observed in rejecting plaintiffs' argument, at the time of the depositions, "Safety-Kleen had a reasonable expectation at the time of trial they could buy [the deponents] a first class ticket and put them on a plane from Illinois to California and get them on the witness stand and then and only then put on their case in chief." Plaintiffs have not shown this conclusion was unreasonable.

Plaintiffs also focus on the fact that Safety-Kleen engaged in some cross-examination of seven or eight of the *Talley* deponents. But when challenged by the trial court, plaintiffs could not point to a single example in any of these depositions of "searching" cross-examination that *Berroteran* indicated would weigh in favor of admission. (*Berroteran*, *supra*, 12 Cal.5th at p. 903.) While plaintiffs now contend two of the cross-examined witnesses were questioned on matters beyond the scope of their direct examinations, plaintiffs forfeited the argument by failing to identify these examples in the trial court, even after being pressed by the court to provide examples. (See

17

*Truck Ins. Exch. v. AMCO Ins. Co.* (2020) 56 Cal.App.5th 619, 635 [" 'arguments raised for the first time on appeal are generally deemed forfeited' "].)  In any event, the record shows one of the two witnesses was only asked five questions on cross-examination while the other was questioned on the single subject of another witness's honesty.  Neither example demonstrates a great interest in preserving witness testimony for trial.  And although plaintiffs point out that the *Talley* plaintiff's counsel concluded one of these two depositions by stating he would "preserve [the] videotape [of the deposition] in sealed fashion until time of trial," they provide no corroboration for their suggestion that this indicated the deposition was meant to serve in lieu of trial testimony.

Finally, plaintiffs emphasize that the *Talley* depositions were videotaped.  The trial court found this factor alone to be insufficient, explaining "if you're a thoroughly careful advocate and care to invest in your cases, you would videotape at a discovery deposition because you want to use for dramatic effect [in front of the jury]," but also "the fact [that] you videotaped doesn't prove that Safety-Kleen knew that it was its first, last, and only opportunity to put forward its own direct evidence." With no other considerations favoring admission here, the trial court's conclusion was consistent with *Berroteran*, which explained that, "[s]tanding alone, the videotaping of a deposition may not trigger a motive and interest to cross-examine."  (See *Berroteran*, *supra*, 12 Cal.5th at p. 897.)

In sum, the trial court reasonably exercised its discretion to exclude the *Talley* depositions under section 1291(a)(2) because plaintiffs did not meet their burden to show Safety-Kleen had a

18

similar interest and motive to cross-examine the *Talley* deponents as it would at trial in plaintiffs' cases.

    2.    *The trial court did not abuse its discretion in rejecting plaintiffs' other asserted bases for admissibility*

Plaintiffs contend the trial court erred because, notwithstanding section 1291(a)(2), the *Talley* depositions were admissible pursuant to the hearsay exceptions under sections 1220 and 1222, under Code of Civil Procedure section 2025.620, and as nonhearsay statements.

    a.    Sections 1220 and 1222

Plaintiffs argue the deposition testimony met the hearsay exceptions for admissions by a party opponent under section 1220 or authorized admissions under section 1222. Section 1220 applies to a declarant's statements that are "offered against the declarant in an action to which he is a party." Section 1222 extends this hearsay exception to statements made "by a person authorized by the party to make a statement or statements for him concerning the subject matter of the statement." (§ 1222, subd. (a); see also *Bowser*, *supra*, 78 Cal.App.5th at p. 611 [because a corporation can only speak through its officers and agents, "statements assertedly made by a corporation are not usually analyzed as party admissions under … section 1220, but rather as authorized admissions under … section 1222"].)

The trial court rejected plaintiffs' argument regarding sections 1220 and 1222, concluding section 1291(a)(2) was controlling regarding the admissibility of former testimony in discovery depositions in prior actions. The court explained: "That a corporate defendant's witness at a deposition may make a statement helpful to plaintiff (as is to be expected if the discovery is worth plaintiff counsel's investment of time and effort) and

19

that such a statement, standing in isolation may be seen to be an admissible admission against interest under [sections] 1220 or 1222 does not answer the question of whether a discovery deposition can be used at trial in later litigation involving other parties, not those on the docket when the deposition was taken. The answer to that question is controlled by the statute most directly on point, [section] 1291(a)(2)."

We agree with this conclusion. Plaintiffs' argument, if accepted, would have broad consequences for discovery depositions of party opponents and effectively undermine the analytical framework set forth in *Berroteran* and the general rule that decision articulated against admission at trial of former testimony from a discovery deposition.[6] The concerns *Berroteran* identified about admitting such evidence apply with equal—if not greater—force when considering prior discovery depositions of a party opponent or its corporate representatives. In that setting, "a party would be unlikely to have a motive or reason at a deposition of its own witness to *disprove* anything" through cross-examination and "concluding otherwise would substantially expand and complicate deposition practice, forcing it to take on the character of a full-blown liability trial." (*Berroteran*, *supra*, 12 Cal.5th at p. 899.) If deposition testimony by a party were automatically admissible against that party in any proceeding in

---

[6] In *Berroteran*, the former deposition testimony at issue was of persons most qualified and other current or former employees of the party opponent in the prior and instant actions. (*Berroteran*, *supra*, 12 Cal.5th at pp. 878-880.) *Berroteran* expressly declined to consider the applicability of section 1222, given the narrow issue on which review was granted. (See *Berroteran*, at p. 889, fn. 19.)

20

perpetuity under sections 1220 and 1222—as plaintiffs' argument effectively posits—a party would be compelled to anticipate how that testimony might be used in lawsuits that are filed potentially years or even decades in the future. A party might then feel obligated to conduct cross-examination not because the current litigation demands it, but out of concern that a future plaintiff might seek to introduce the deposition testimony against the party. *Berroteran*'s analytical framework, requiring courts to undertake a fact-specific inquiry to ensure admission of only that deposition testimony which is given under a sufficiently similar interest and motive in cross-examination, exists precisely to guard against this outcome.[7]

Plaintiffs rely on dicta in *Greenspan v. LADT, LLC* (2010) 191 Cal.App.4th 486, 524 stating, " 'Any statement, oral or written, made by [a party is] admissible as to [that party] under the hearsay exception for party admissions,' " including "prior testimony, whether given in a deposition, during the arbitration hearing, in judgment debtor proceedings, or in another matter." Unlike here, *Greenspan* involved the attempted use of deposition testimony taken in the *same* action during earlier post-judgment discovery. (*Id.* at p. 506.) Because *Greenspan* did not involve the admissibility of former testimony taken in a prior action, the

---

[7] Because we conclude sections 1220 and 1222 do not make former deposition testimony of a party or its authorized agent admissible under circumstances where section 1291(a)(2) governs, we need not address Safety-Kleen's alternative contention that those exceptions do not apply because Safety-Kleen is not the " 'legal equivalent of the "Safety-Kleen" Defendant which was defending the prior litigation' " due to the reorganization following the bankruptcy proceedings in 2000.

court had no occasion to consider the effect of section 1291(a)(2), and *Berroteran* was not yet decided. The court's reference to the admissibility of former testimony given in "another matter" is merely dictum and of no import here. (See *Areso v. CarMax, Inc.* (2011) 195 Cal.App.4th 996, 1006 ["Mere observations by an appellate court are dicta and not precedent, unless a statement of law was 'necessary to the decision, and therefore binding precedent ....' "].)

              b.      Code of Civil Procedure section 2025.620

Plaintiffs also argue the *Talley* depositions were admissible under Code of Civil Procedure section 2025.620, which allows for specified uses of deposition testimony at trial "against any party who was present or represented at the taking of the deposition, or who had due notice of the deposition and did not serve a valid objection ..., so far as admissible under the rules of evidence applied as though the deponent were then present and testifying as a witness." (Code Civ. Proc., § 2025.620; see *Berroteran*, *supra*, 12 Cal.5th at p. 894; *LAOSD Asbestos Cases* (2023) 87 Cal.App.5th 939, 948.)

Code of Civil Procedure section 2025.620 has a number of provisions allowing for admission in court proceedings of deposition testimony in different contexts (see subdivisions (a) through (g)), but the only one that is applicable to testimony from a former proceeding is subdivision (g). That provision states, "When an action has been brought in any court of the United States or of any state, and another action involving the same subject matter is subsequently brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the initial action may be used in the subsequent action as if originally taken in that subsequent

action." (Code Civ. Proc., § 2025.620, subd. (g).) However, to be admissible under section 2025.620, subdivision (g), a deposition taken in an "initial action" must have involved the same parties on both sides (and the same subject matter) as in the "subsequent action." (*Ibid.*) Because plaintiffs were not parties to the *Tally* lawsuit, the depositions in that case are not admissible in their cases under section 2025.620, subdivision (g). (See *Bowser*, *supra*, 78 Cal.App.5th at pp. 618-619 [depositions of Ford employees taken in a class action against Ford were not admissible under § 2025.620, subd. (g), in trial in separate case against Ford brought by unnamed class member because the depositions were not taken in an action "between the same parties"].)

None of the other provisions of Code of Civil Procedure section 2025.620 applies here. The Law Revision Commission comment to Evidence Code section 1290 states, "[D]epositions taken in *another* action are considered former testimony under Section 1290, and their admissibility is determined by Sections 1291 and 1292," while "Code of Civil Procedure Sections 2016-2036 deal comprehensively with the conditions and circumstances under which a deposition taken in a civil action may be used at the trial of the action in which the deposition was taken." (Cal. Law Revision Com. com. ¶ 1, 29B pt. 4 West's Ann. Evid. Code (2015 ed.) foll. § 1290; accord, *N.N.V. v. American Assn. of Blood Banks* (1999) 75 Cal.App.4th 1358, 1395; Fairbank et al., Cal. Prac. Guide: Civil Trials and Evidence (The Rutter Group 2025) ¶ 8:1397.) Accordingly, the trial court did not abuse its discretion in concluding the *Talley* depositions were not admissible under Code of Civil Procedure section 2025.620.

c.      Nonhearsay use

Plaintiffs contend some portions of the *Talley* depositions were admissible because they were to be used at trial for nonhearsay purposes, such as showing what Safety-Kleen knew or should have known at relevant times and not for the truth of the matter.  (See § 1200, subd. (a) [hearsay is an out-of-court statement offered for its truth].)  However, neither in the trial court nor on appeal have they pointed to any specific testimony that they claim would be admissible on this basis.  Thus, they failed to establish any particular out-of-court statement could be admitted for a nonhearsay purpose.  (See *People v. Mataele* (2022) 13 Cal.5th 372, 413 [" "'The proponent of proffered testimony has the burden of establishing its relevance, and if the testimony is comprised of hearsay, the foundational requirements for its admissibility under an exception to the hearsay rule.  [Citations.] Evidence is properly excluded when the proponent fails to make an adequate offer of proof regarding the relevance or admissibility of the evidence.' "].)

C.    *The Trial Court Did Not Abuse Its Discretion in Excluding the* Talley *Depositions as to Petro Source and BC Stocking*

Although the Breunings appealed from the judgments in favor of Petro Source and BC Stocking, they do not specifically challenge the trial court's granting of the defendants' joinders in Safety-Kleen's motions in limine.  In any event, the Breunings do not contest Petro Source's and BC Stocking's assertions that they did not receive notice of or an opportunity to cross-examine at the *Talley* depositions.

For the depositions that were cross-noticed in the related *Montiel* and *Rivas* cases—to which Petro Source and BC Stocking

were parties—section 1291(a)(2) governed the admissibility of the deposition testimony.  Without evidence showing Petro Source and BC Stocking had notice of the depositions, the trial court could reasonably conclude the defendants did not have the requisite "right and opportunity to cross-examine" the witnesses in the prior action in which the testimony was given. (§ 1291(a)(2).)

As for the depositions that were solely noticed in the *Talley* case—to which Petro Source and BC Stocking were *not* parties— the deposition testimony would be admissible only if it met the qualifications for the hearsay exception under section 1292, which allows for admission in a civil action of the former testimony of an unavailable witness if "[t]he issue is such that the party to the action or proceeding in which the former testimony was given had the right and opportunity to cross-examine the declarant with an interest and motive similar to that which the party against whom the testimony is offered has at the hearing."  (§ 1292, subd. (a).)

As discussed, plaintiffs have not shown Safety-Kleen had the same interest and motive to cross-examine the *Talley* deponents as it would have in the Breunings' trial; for the same reason section 1291 is not satisfied, the requirements of section 1292 are not met.  The trial court did not abuse its discretion in excluding the *Talley* depositions as to these defendants.[8]

---

[8]     Petro Source and BC Stocking moved for "summary affirmance," arguing plaintiffs had forfeited any argument regarding them by not mentioning them in their opening brief. The motions for summary affirmance are denied as moot.

25

## DISPOSITION

The judgments are affirmed. Safety-Kleen's cross-appeal challenging the trial court's order granting Murphy's request for judicial notice is dismissed as moot. Petro Source's and BC Stocking's motions for summary affirmance are denied as moot. Safety-Kleen, Petro Source, and BC Stocking shall recover their costs on appeal.

STONE, J.

We concur:

SEGAL, Acting P. J.

FEUER, J.